SAMUEL GORDON

*v.*

MARGARET C. DICKISON.

*Filed at Ottawa January 21, 1890.*

1. DOWER—*seizin in husband—to support claim of dower.* Possession of land under a claim of ownership affords *prima facie* evidence of seizin in fee. The fact that a party has had possession of land under claim of ownership, and has used it for several years, and finally sells and conveys the same, affords sufficient evidence of seizin to entitle his widow to dower therein.

2. SAME—*after divorce for husband's fault.* A divorce granted to a wife on the ground of the husband's desertion without cause, will not defeat her claim of dower in his lands after his death.

3. SAME—*adultery by the wife—whether a bar to dower.* Adultery by a wife after she has been wrongfully deserted and abandoned by her husband, will not have the effect of barring her claim of dower in her husband's lands. But if she voluntarily leaves her husband and commits adultery she will be barred.

WRIT OF ERROR to the Circuit Court of Peoria county; the Hon. T. M. SHAW, Judge, presiding.

This was a bill brought by Margaret C. Dickison, against Samuel Gordon, for the assignment of dower in the south-west quarter of section 21, town 10 north, range 7 east, in Peoria county. It is alleged in the petition, that on November 29, 1859, Margaret C. Dickison intermarried with Griffith Dickison, living and cohabiting with him for several years; that about March 20, 1867, a decree of divorce was rendered by the Peoria circuit court, for no fault of the petitioner, but for the fault of the said Griffith Dickison, forever divorcing them; that about March 12, 1886, the said Griffith Dickison died, testate; that during their coverture the said Griffith Dickison was seized in fee of the south-west quarter of section 21, in township 10 north, range 7 east of the fourth principal meridian, in Peoria county, Illinois; that on March 2, 1886,

Griffith Dickison conveyed to Samuel Gordon the west half of the above described tract; that by reason of petitioner's marriage with Griffith Dickison, petitioner became entitled to dower in said lands, which has never been assigned her, nor has she ever released the same.

Samuel Gordon answered, admitting the marriage, divorce and death, as alleged by petitioner; admits seizin by said Griffith Dickison of the west half of said south-west quarter, except the north-east quarter thereof, which north-east quarter said Griffith Dickison did not own or procure until after the said divorce; denies that petitioner is entitled to dower in any of the lands above described, because prior to said divorce, and while the said complainant was the wife of the said Griffith Dickison, she voluntarily left her said husband, and while thus living apart and separate from him, she did frequently, in the city of Peoria, and elsewhere, with one Benjamin Tucker, and with one Mr. Bodine, whose first name is unknown to respondent, and with other persons whose names are unknown to respondent, commit the crime of adultery, all of which was unknown to said Griffith Dickison at the time of procuring said divorce; and that since the said adultery by said complainant, she and said Griffith Dickison never were reconciled.

A replication having been filed, a hearing was had on the pleadings and evidence, and a decree was rendered against petitioner as to the east half of the quarter-section, and in her favor as to the west half. To reverse the decree, defendant, Gordon, sued out this writ of error.

Mr. ARTHUR KEITHLEY, for the plaintiff in error:

By the common law, a divorced woman was not entitled to dower. *Sisk* v. *Smith,* 1 Gilm. 503.

It is not the going away, but it is the adultery, which constitutes the bar in section 15 of the Dower act. *Hetherington.* v. *Graham,* 6 Bing. 135.

So where a woman was sold by her husband to one, with whom she lived in adultery, she thereby forfeited her dower. 1 Cruise's Dig. Real Prop. 137; 2 Crabb on Real Prop. 111.

If she goeth willingly with her avouterer, this is a departure and tarrying, albeit she remaineth not with the adulterer. So if the woman be taken away not *sponte*, but against her will, and she afterwards consent and remain with the adulterer without being reconciled, she shall lose her dower, for the cause of the bar is not the manner of going away, but the remaining with her adulterer.

Chief Justice MARSHALL, in the case of *Stegall* v. *Stegall*, 2 Brock. 256, says: "So far as respects that part of the provision which relates to the wife's willingly leaving her husband, I think it is satisfied by any separation on her part, and I think any separation voluntary which is not brought about by his act or by any restraint on her person." (See, also, *Walters* v. *Jordan*, 13 Ired. L. 361; 2 Scribner on Dower, p. 500, *et seq.*) So, in *Woodward* v. *Dowse*, a recent case, 10 C. B. (N. S.) 722, 100 Eng. Com. L. R., it is held, that if she is driven from her husband's house by his cruelty, and she, while thus away, commits adultery, she can not have dower.

Messers. McCULLOCH & McCULLOCH, for the defendant in error:

Dower is not, in any case, barred by adultery, unless the separation was a voluntary and willful one on the part of the wife. But here it has been adjudged that it was the husband that had deserted and abandoned his wife without any reasonable cause, and had continued that abandonment two years. In such case, if she falls, he is the guilty cause of her fall, and ought not to profit by it. Matt. VI, 32.

The offense aimed at in the statute is the abandonment of the husband for an adulterer. If a husband drive his wife from his house, he has no reason to complain if, in a moment of forgetfulness or desperation, she places herself in the keep-

ing of another.   Such is the law in America.   1 Bishop on
Marriage and Divorce, secs. 626-629 ; *Cogswell* v. *Libbells,* 3
N. H. 41 ; *Graham* v. *Law,* 6 U. C. C. P. 310 ; *Rawlins* v.
*Buttill,* 1 Houston, 224.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

As the court decreed against the petitioner as to the east
half of the quarter, and as no cross-errors have been assigned,
the decree of the court in regard to that tract of land is not
involved.

It will be observed that the defendant admitted, in his
answer, that Griffith Dickison, during coverture, was seized
of the west half of the quarter, except the north-east quarter
thereof, and as to that twenty acres it is insisted that the decree
is erroneous, because the evidence introduced on the trial fails
to show seizin in Griffith Dickison during coverture.   No title
papers were introduced in evidence, but it was proven that as
early as 1835 or 1836, Griffith Dickison settled on the south-
east quarter of section 21, which joins the land in controversy
on the east, erected a house, and resided there for many years.
His son testified that his father first fenced in the farm land,
and, as he thinks, as early as 1865 or 1866 he set out his fences
inclosing the south-west quarter of section 21.   The west half
was called the Russell eighty, and he used it for sheep pasture.
The east half of the quarter, or the Riggs eighty, was also used
for pasture.   It also appears, that Dickison was in possession
when he sold to Gordon, and upon the completion of the sale
the possession of the premises was transferred to him,—the
twenty acres with the balance of the eighty.   After the in-
closure of the land, in 1865, it was used in connection with
and as a part of the farm upon which Dickison resided.

Possession of land under a claim of ownership has always
been regarded as evidence of a fee.   *Davis* v. *Easley,* 13 Ill.
196, is a case in point.   In speaking of the rights of a party
in possession of a tract of land, the court said:   "A party in

the actual possession of land may maintain trespass against a stranger for any disturbance of his possession. The law presumes that he is rightfully in possession, until the contrary appears; and in actions of ejectment, and for injuries to the inheritance, the possession of a tract of land by a party claiming to be the owner in fee is *prima facie* evidence of his ownership and seizin of the inheritance, and throws upon his adversary the burden of rebutting the presumption thus raised." (See, also, *Indianapolis and St. Louis Railroad Co.* v *Cobb,* 68 Ill. 54.) Here, the evidence that Dickison was in possession of the land, claiming to own it, and using it as a part of his farm during coverture, and subsequently selling it to the defendant, was evidence that he was seized of a fee, and, in the absence of any rebutting evidence, sufficient, so far as the question under consideration is concerned, to authorize the decree.

On the hearing, the defendant offered to prove, that after Dickison and his wife separated, and after she had commenced the divorce proceeding, she committed adultery; but the evidence was rejected, and the ruling on this question is relied upon as error. At common law, a divorce *a vinculo matrimonii* bars the claim of dower, for, as said by Kent, (vol. 4, p. 53,) to entitle the party claiming dower, she must have been the wife at the death of the husband. But chapter 41 of our statute, entitled "Dower," has modified the common law on this subject. Section 14 provides: "If any husband or wife is divorced for the fault or misconduct of the other, except where the marriage was void from the beginning, he or she shall not thereby lose dower, nor the benefit of any such jointure; but if such divorce shall be for his or her own fault or misconduct, such dower or jointure, and any estate granted by the laws of this State in the real or personal estate of the other, shall be forfeited." Section 15 provides: "If a husband or wife voluntarily leave the other and commit adultery, he or she shall be forever barred of dower and of the benefit of any such jointure, unless they are afterwards reconciled and dwell together."

10—131 ILL.

It will be observed that section 14, without any qualification or exception whatever,—save only where the marriage was void from the beginning,—preserves the right of dower where the divorce is granted for the fault or misconduct of the other. Here was a decree of divorce wherein the court had determined that the husband had deserted and abandoned his wife without any reasonable cause, and that such abandonment had continued for a period of two years, and the divorce was granted for the fault and misconduct of the husband. The complainant, by the decree, clearly falls within the terms of section 14, which protects her dower rights, and unless the offered evidence would bring the case within section 15, *supra,* the court ruled properly in excluding it.

Section 15 does not provide that where the wife is driven from the home of the husband, and after she is thus driven away, commits adultery, she shall be barred of dower ; nor does the statute provide where the wife is deserted and abandoned, if after such desertion and abandonment she commit adultery, she shall be barred of dower. Such is not its language or proper construction. But, on the other hand, the statute is, if the husband or wife voluntarily abandon the other and commit adultery, then dower may be barred. There was no offer here to show that the wife voluntarily abandoned the husband and committed adultery. Indeed, it may well be doubted whether such proof could be made while the decree of divorce remained in full force, as the decree was a conclusive determination of the question between the parties. Section 15 of the statute is a wholesome provision of our law, when properly construed. Its object, no doubt, was to impose a penalty,— the forfeiture of dower,—when the husband voluntarily abandoned the wife, or the wife voluntarily abandoned the husband, and went off with an adulterer.

Perceiving no error in the record, the decree of the circuit court will be affirmed.

*Decree affirmed.*