## Atchison, Topeka and Santa Fe Ry. Co. et al. v. Jacob Jones.

1. FORMER RECOVERY—*Parol Evidence Admissible to Show Settlement of Former Suit as a Bar to Subsequent Recovery.*—When a settlement of a former suit is shown by way of bar to a subsequent suit, the plaintiff may introduce parol evidence not contradictory to the record to show that the prior suit and settlement did not relate to the same transaction as the subsequent suit.

2. SAME—*One Recovery for a Permanent Injury Bars Future Recoveries.*—When a recovery is had in one action, where the cause of the injury is of a permanent kind, it will be a bar to any future recovery for injuries resulting from the same cause.

3. SAME—*Limitation of Doctrine.*—The doctrine as to entireness of

A., T. & S. F. Ry. Co. v. Jones.

recovery in one action, where the cause of injury is of a permanent kind, is limited to the case of a railroad built under authority of law and in a reasonably proper and skillful manner so as to avoid the infliction of all loss and injury not necessarily resulting from thus building and operating the road.

4. SAME—*What Railroad Improvements Are Not of a Character to be Treated as Permanent.*—The building of an embankment in and across a natural watercourse, and diverting the waters therefrom into an artificial channel which is insufficient to carry the waters so diverted, by a railroad, is not an improvement of a character that requires a person injured thereby to treat them as permanent, and bring one action for all damages, both present and prospective.

5. RAILROADS—*Duty When Closing a Natural Watercourse and Providing an Artificial Channel.*—When a railroad company for its own convenience elects to close a natural watercourse and provide an artificial channel, it is its duty to make such channel of sufficient capacity to properly carry the waters then carried by such natural channel, and also all waters that may thereafter lawfully come to or be turned in to flow through such natural channel.

6. SAME—*Liability for Continuing Injury to Land.*—A railroad company causing a continuing injury to land, and its lessees, immediate and remote, operating the road, are liable for such injuries.

7. SAME—*Payment of Compensation for Right of Way Does Not Exempt Company from Liability for Damages Resulting from its Negligence.*—The payment of the compensation or damages allowed the land owner for right of way, does not exempt the company from liability for damages resulting from its negligence, either in the construction, maintenance or operation of its road. The damages taken into account when the right of way is procured, are only such as necessarily and naturally result when due and proper care have been exercised.

8. SAME—*What Passes with a Deed to a Right of Way.*—A grant of a right of way being made for a valuable consideration, it is presumed that the grantor intended to convey, and the grantee expected to receive, the full benefit of it, and therefore that the grantor not only conveyed the thing specifically described, but all other things, so far as it was in his power to pass them, which were necessary to the enjoyment of the thing granted.

9. CONTINUANCES—*Terms to be Imposed upon Granting a Continuance Rest Largely in the Discretion of the Court.*—The terms to be imposed upon granting a continuance rest largely in the sound discretion of the court.

10. DAMAGES—*Plaintiff Not Estopped from Claiming Damages to His Land Because He Dug the Artificial Channel for the Company Causing the Damage.*—The owner of land along a railroad who has suffered damage from the overflow of an artificial channel along the railroad right of way is not precluded from obtaining compensation by the fact that he constructed such channel after the specifications of the railroad company.

11. SAME—*Measure of, for a Continuing Injury to Land by Flooding.*—The measure of damages where land is flooded by water through a continuing injury, is the rental value of the land.

12. SAME—*From Continuing Nuisance—Injured Person's Duty to Do What He Reasonably Can to Lessen Damages.*—If a person injured by a continuing nuisance can, by a reasonable expenditure under the circumstances, in the exercise of reasonable diligence, by work on his own land, lessen the damages or obviate them in whole or in part, it is his duty to do so.

13. SAME—*No Recovery for Damages Which Might Have Been Prevented.*—There can be no recovery for damages which might have been prevented by reasonable efforts on the part of the person injured.

14. TITLE—*Evidence of Title Sufficient to Sustain an Action for Injuries to Land.*—Evidence that a person has been in possession of lands for a long period of time, claiming to be the owner, is sufficient to sustain an action for injuries to such land.

15. EVIDENCE—*That Owner of Flooded Land Could Have Lessened Damage by Another System of Drainage.*—Evidence is admissible to prove that the owner of land which has been damaged by reason of the destruction of its system of drainage could have lessened his damage by constructing another system.

Trespass on the Case, for damages to land by flooding. Appeal from the Circuit Court of Marshall County; the Hon. LESLIE D. PUTERBAUGH, Judge presiding. Heard in this court at the April term, 1903. Reversed and remanded. Opinion filed October 8, 1903.

Statement of the Case.—This suit was brought by plaintiff to the January term, 1902, of the Marshall County Circuit Court, to recover damages alleged to have been sustained by him, by reason of the improper construction and maintenance of defendants' railroad upon and adjacent to plaintiff's lands. The original declaration in this case consisted of seven counts and charged a permanent injury to the lands of plaintiff, and in some of them, also, injuries to the use and occupation. Issue was joined upon pleas of the general issue, the five years' statute of limitations, and a special plea setting up a settlement of a former suit, brought by the plaintiff to the January term, 1896, of the Marshall County Circuit Court, against the Chicago, Santa Fe and California Railway Company, the Atchison, Topeka and Santa Fe Railroad Company and the receivers of the latter company, for, as the plea alleges, " the commission of the very same grievances charged against these defendants

in the declaration heretofore filed in this case by the plaintiff."

A trial was entered upon at the January term, 1902, and after the testimony had been heard in part, plaintiff moved the court for leave to file additional counts to his declaration, charging injury to his crops and use and occupation of his lands. Leave was granted upon condition that he abandon the counts in his declaration alleging permanent injury to the premises, and upon the further condition that he pay all costs accrued up to that time, except witness fees, which fees the court ordered should abide the determination of the suit. Thereupon the plaintiff filed six additional counts, counting upon injury to the use and occupation of his lands. The first four counts, in varying language, allege that Crow creek was a natural stream of water flowing across plaintiff's land in a natural channel and affording drainage for his premises, into which he had drained them, and that defendants obstructed and filled up its natural channel and diverted the waters therefrom into an artificial channel along and upon the railroad right of way, and that said artificial channel so made by defendants was insufficient to carry the waters diverted from the natural channel of the creek, and by reason thereof they overflowed and percolated through the earth and drains upon plaintiff's land, causing the injury complained of.

The lands claimed by plaintiff to have been injured by the diversion of the waters of Crow creek from its natural channel are: the southeast quarter, and all that part of the south half of the northeast quarter lying south of defendants' right of way, of section 35, township 29 north, range three (3) west of the third (3d) principal meridian. This was called by the witnesses the "Jones farm." In the bill of particulars plaintiff includes the north half of the southwest quarter of said section 35, but on the trial abandoned any claim for damages to that tract.

Plaintiff was also the owner of the north half of the southeast quarter of section 34, which, together with other land was called the "Dunn farm." Also the southwest quarter

of the northeast quarter of the same section, called the
"Sowards forty." The fifth and sixth additional counts,
count on injuries to the use and occupation of these lands
and allege that there was a natural drain, ditch, trench
and channel across the premises, affording ample outlet
for drainage; that plaintiff had drained his lands into said
natural waterway which ran over and across defendants'
right of way, and that defendants obstructed the flow of
water therein by building an embankment across the chan-
nel, thereby causing the injury.

Upon the filing of the additional counts, defendants
asked for and were granted a continuance of the cause.
The case was tried at the September term, 1902, the pleas
being the same as filed to the original declaration, and
resulted in a verdict and judgment for plaintiff for $2,000.

The evidence shows the railroad was built across plaint-
iff's lands in 1887. Crow creek is a rather crooked and
tortuous stream, and something more than a mile east
from plaintiff's lands the railroad ran along the line of the
creek, crossing it several times. In constructing the road
at this place the channel of the creek was filled up and
obliterated and a channel cut along the railroad right of
way and parallel with the track, to a point about one-fourth
of a mile west of the east line of section 36, where it inter-
sected the channel of the creek on land owned by Jacob
Storm. In 1895 the railroad company continued this chan-
nel on down its right of way west a little more than three-
quarters of a mile and a short distance west of Jones' east
line where it intersected and emptied into a branch of
Crow creek. They filled up the creek at the point where the
channel, cut when the road was built, intersected and
emptied into it and undertook to carry all the water down
the channel cut west along the right of way. This channel
was fifty feet wide and, on the average, three feet deep.
The dirt taken out of it was thrown on the south side to
form a levee or embankment. In 1897, the railroad com-
pany continued this channel on west to near midway of the
west half of section 35 to the main channel of Crow creek,

where it is crossed by the railroad bridge known as bridge No. 195.

Prior to 1869 the channel of Crow creek ran wholly through and over the north half of sections 35 and 36 and substantially along the present line of the railroad track. In that year it cut a new channel, beginning in the northeast corner of section 36 and running in a southwesterly direction, passing down into the south half of section 36 at the west side of that section, and thence through the south half of section 35 until it passes the half section line, and thence northwesterly across the railroad at bridge 195. A part of the old channel, now called the North creek, passed through the north part of plaintiff's land, described as the south half of the northeast quarter of section 35, from east to west for a distance of a fourth of a mile or more, where it left his land and crossed the railroad track. Plaintiff, to drain his lands in the east half of section 35, in 1888 and 1889, tiled them into the north channel of Crow creek, which was long before the creek was filled up on the Jacob Storm land in section 36, and the channel cut from that point west along the right of way to the plaintiff's land. It was the channel cut in 1897 that crossed the north or old Crow creek into which plaintiff had his lands tiled. This old channel of Crow creek was filled up where it crossed the railroad, by an embankment, and connected with the artificial channel cut by the railroad company, by a box culvert provided with a trap door for letting the water pass into the artificial channel.

It is claimed by plaintiff that the artificial channel cut along the railroad right of way was insufficient to carry the water that naturally came into and flowed through the natural channel of the creek, which had been obstructed and the waters diverted therefrom by and through the artificial channel, and that by reason thereof the water overflowed the artificial channel and spread over and upon the plaintiff's land and carried silt and debris into the old channel of the creek, which was the outlet for his drainage, and filled the same up so that plaintiff's tile could not and

did not drain his land; that they were thereby rendered so wet that he was unable to cultivate them and raise crops thereon.

As to the land in section 34, the plaintiff's claim is, that there was a natural waterway leading from the north half of the southeast quarter to and across the railroad, which formed the natural outlet for his drainage; that he had tiled and ditched his land into said natural waterway and that defendants closed it up by building an embankment across it on their right of way, which obstruction caused the water to flow back and stand upon plaintiff's land.

When the railroad was constructed in 1887, an embankment of several feet in height was thrown up across section 35 and for a short distance in section 34, upon which the track was laid. From the point where this embankment ended in section 34 the track was laid on a high trestle extending to the Illinois river. In 1894 this was filled by an embankment of earth of a width of about forty feet at the bottom and of a height of about eighteen feet, and this is the embankment that obstructed the channel through which plaintiff claims his land in section 34 drained.

ROBERT DUNLAP, BARNES & MAGOON and LEE F. ENGLISH, attorneys for appellants.

E. D. RICHMOND and ARTHUR KEITHLEY, attorneys for appellee.

MR. JUSTICE FARMER delivered the opinion of the court.

We will first notice the proposition of defendants, that no recovery can be had as to the lands in section 35, because, it is claimed, the plaintiff had settled a former suit brought against some of the same defendants for the same injuries complained of in this suit, and received payment therefor.

It appears from the evidence that about the time, or soon after, the channel was cut in 1895 it overflowed and spread over plaintiff's land. On December 30, 1895, plaintiff commenced a suit against the Chicago, Santa Fe and California Railway Company, the Atchison, Topeka and Santa Fe

Railroad Company, and Aldace F. Walker and John J. Mc-Cook, receivers of the last mentioned company, claiming damages in the sum of $1,500. The declaration in substance charged that defendants obstructed the natural channel of the creek, which had before that time drained plaintiff's lands, so that the water could not flow through it, and diverted the waters and caused them to flow along the right of way, but that the defendants neglected and failed to construct a sufficient channel to carry said waters, by reason whereof they flowed over and upon plaintiff's lands, washed out and destroyed his unharvested corn, so washed the soil and filled it with ditches and deposited thereon gravel, sand and debris that it was rendered of little value, and greatly annoyed and incommoded plaintiff in the possession, use, occupation and enjoyment of said premises, to his damage of $1,500.

To this declaration defendants pleaded the general issue. This suit was never tried, but was compromised by the payment to the plaintiff, by defendants, of $300, for which the plaintiff, on May 8, 1896, executed the receipt hereinafter referred to. Afterward by agreement of parties, the suit was dismissed at plaintiff's costs.

Defendants insist that this suit was for the recovery of damages for permanent injury to plaintiff's lands, and, therefore, when settled by the payment agreed upon, the defendants were authorized to continue their improvements and the obstructions to the natural channels of Crow creek in the same condition they then were, and that plaintiff was forever barred from maintaining another suit for injuries resulting therefrom, and cite numerous authorities in support of the proposition that where an action is brought for the deterioration in value of real estate, occasioned by a nuisance of a permanent character, one recovery is a bar to all future actions for the same cause. There can be no question as to the law on this subject in this state, for it is well settled by repeated decisions. The question here to be determined is its applicability to this case. It will be noticed that the declaration charges that the defendants, by

their wrongful acts, washed out, covered up, and destroyed his unharvested corn, damaged the soil and rendered it of little value, and greatly annoyed and incommoded plaintiff in the possession, use, occupation and enjoyment of his premises. The voucher made, presumably by the railroad company, for plaintiff to sign, released and discharged defendants " on account of obstructions or alleged obstructions made to the natural channel of said creek on or about the first day of September, 1895, whereby the water was caused to be flowed over his premises as aforesaid, and concerning which Jacob Jones has instituted suit," etc., and concludes " and for and in full discharge, release and satisfaction of any claims for damages by reason thereof or as claimed and set forth in his said suit aforesaid, hereby releasing all of said defendants from any liability on account of such alleged obstruction and the alleged diversion of said natural channel." It is clear, to our minds, from this language and the amount of the settlement, that the parties themselves considered and treated that suit as an action to recover damages for the injury to plaintiff's crops, and use and occupation of his premises, caused by the overflow just preceding the commencement of the suit, resulting from an obstruction to the natural channel of the creek and the continuation of the artificial channel down into the plaintiff's lands. Furthermore, plaintiff testifies that Captain Kilmer, the agent of the defendants, stated when he settled with him, that the settlement was for the one act, the overflow. That it was competent, under the language of this declaration and the voucher signed by plaintiff, for the court to hear parol proof upon this subject, we have no doubt. Barger v. Hobbs, 67 Ill. 592; C., B. & Q. R. R. Co. v. Schaffer, 124 Ill. 112. In our opinion the jury was warranted in finding from the evidence that the settlement of that suit and the release were for injuries, only, done to plaintiff's crop by the overflow of 1895.

It is also insisted that the railroad, its works and improvements, are permanent structures, built according to the methods of good railroad construction, and can not be

treated as a continuing nuisance for which successive recoveries may be had.

In C. & E. I. R. R. Co. v. Loeb, 118 Ill. 203, and numerous other authorities which might be cited, it is held that where a recovery is had in one action, where the cause of the injury is a permanent kind, it will be a bar to any future recovery for injuries resulting from the same cause. In C., B. & Q. R. R. Co. v. Schaffer, *supra*, the court say :

" But the doctrine as to entireness of recovery in one action, where the cause of injury is a permanent kind, is limited to the case of a railroad built under authority of law and in a reasonably proper and skillful manner, so as to avoid the infliction of all loss and injury not necessarily resulting from thus building and operating the road." O. & M. R. R. Co. v. Wachter, 123 Ill. 440.

Without multiplying the citations of the numerous authorities to be found in our reports upon this subject and without a further discussion of the principles so well settled by former decisions of our supreme and appellate courts, it is sufficient to say that in our opinion the evidence shows the railroad construction and ditching in section 35 were not of a character that required plaintiff to treat them as permanent, and bring one action for all damages, both present and prospective.

The evidence in this case shows that the channel cut by the railroad company on its right of way, into which they diverted the waters of Crow creek after obstructing and filling up the natural channel, was insufficient to properly carry said waters. · When the 1897 extension of the ditch was made across the lands of plaintiff in section 35, a box culvert was put in, connecting the old or north channel of Crow creek with the artificial channel at the point where said artificial channel crossed the natural channel of Crow creek. It was this branch of Crow creek, into which plaintiff had tiled his lands in section 35, and which the evidence fairly shows reasonably drained said lands until it was filled up and almost or entirely obliterated by deposits caused by overflows from the artificial channel, which cut through the dike, spread over plaintiff's land and deposited in the

creek dirt, silt and debris, thereby filling it up and closing
the outlet for plaintiff's drainage so that his tile would not
operate.    To our minds no amount of testimony that the
railroad and its improvements in this territory were built
according to and consistent with approved methods of
good railroad construction, can justify the building of an
embankment in and across a natural watercourse and divert-
ing the waters therefrom into an artificial channel which
is insufficient to carry the waters so diverted.   Where a
railroad company for its own convenience elects to close a
natural watercourse and provide an artificial channel it is
its duty to make such channel of sufficient capacity to prop-
erly carry the waters then carried by such natural channel
and also all waters that may thereafter lawfully come to or
be turned in to flow through such natural channel.

In K. & S. R. R. Co. v. Horan, 30 Ill. App. 552, the
Appellate Court use this language :

" The Parker slough was a watercourse, and it was the
legal right of any one along its line for miles above the
railroad, where the waters naturally shed toward the
slough, to drain into it, and no one below, owning land
along the slough, would have any legal remedy against
such person so draining water into the slough above them
for any damage done to his inheritance by means of an
increased flow of water caused thereby.  In other words,
the slough was a legal watercourse for the drainage of all
the land, the natural tendency of which was to cast its
surplus water caused by the falling of rain and snow into
it, and this whether the flow was increased by artificial
means or not.  It would seem legitimately to follow that
the railroad company would be bound, in providing a pas-
sageway for the slough, to anticipate and provide for
any legal increase of the water flow.  If it did not, it was
doing a wrong and a legal injury to any one situated like
the appellee, who was damaged in consequence of a failure
on its part to do its duty."

This language was quoted approvingly in the opinion of
the Supreme Court affirming the judgment of the Appel-
late Court in 131 Ill. 288.

It was shown by the evidence in this case that the flow
of water through the natural channel of Crow creek was

increased from time to time as the lands naturally draining into it were tiled and ditched, and the railroad company took upon itself the burden of caring for all such increased flow.

It is insisted that the filling up of the creek channel into which plaintiff had tiled and drained his lands was not due to overflows from the artificial channel cut by the railroad company but resulted from the construction of the Copperas creek dam across the Illinois river by the state in 1877 or 1878; and it is claimed that this process of filling up the old creek channel was gradual from that time. The evidence shows that the construction of the Copperas creek dam had the effect of raising the water level of the Illinois river about three feet. This, it is contended, retarded the flow of water through Crow creek into the river, and caused deposits of silt, thus gradually filling up its channel, and that long before the grievances complained of in this case, said north channel into which plaintiff had tiled his land was to a large extent filled up. As is not unusual in such cases, the testimony of the witnesses on the different sides varied greatly and was to a considerable extent contradictory. Fifty-four witnesses were sworn and testified on the trial, which consumed seven or eight days, and we can not, therefore, take up and analyze all this mass of testimony. We have read it all with great care from the abstract and much of it from the record. A recital of it would unreasonably lengthen this opinion and we will therefore give only our conclusions drawn from this testimony with an occasional reference to the testimony of some particular witness.

Plaintiff's evidence tended to show that prior to the extension of the artificial channel onto his land in 1895, the north channel of the creek was open and fairly well drained his land, and that prior to that time he raised reasonably good crops thereon; that immediately after the extension of the artificial channel it overflowed and filled up the natural channel into which plaintiff's land drained, since which time he has been unable to raise crops.

The defendants' testimony, as before stated, tended to show that the condition of plaintiff's land and the filling up of the natural channel of the creek were due to the construction of the Copperas creek dam and the raising thereby of the water level of the Illinois river three feet, and that the filling of the natural channels and the wet condition of plaintiff's land has been a matter of gradual development since that time.

The jury found and the court approved the finding, that plaintiff's contention was sustained by the greater weight of the evidence, and we agree with that finding.

It is contended that all the work was done and acts committed which caused plaintiff's alleged injuries, by the Chicago, Santa Fe and California Railway Company and the Atchison, Topeka and Santa Fe Railroad Company and its receivers, before the Atchison, Topeka and Santa Fe Railway Company had any connection with the road or its management. Counsel say the Atchison, Topeka and Santa Fe Railway Company had no existence until 1898 and therefore could not be jointly liable with the Chicago, Santa Fe and California Railway Company for all injuries sustained by plaintiff during the period of five years next preceding the commencement of this suit. It is not clear from the evidence when the last mentioned company was created or first became connected with the management of the road, but there is evidence in the record tending to show that it has recognized its own existence and connection with the operation of said railroad for the full period of time for which damages are claimed in this suit. We understand the law to be that so long as the obstructions continued, the railroad company that caused them, and its lessees, immediate and remote, operating the road, would be liable for the injuries caused thereby. The Atchison, Topeka and Santa Fe Railway Company occupied the position of lessee of the Chicago, Santa Fe and California Railway Company—whether immediate or remote does not very satisfactorily appear from the evidence—and as such we hold would be jointly liable with the lessor company.

It is also insisted that the court erred in not taxing the witness fees against the plaintiff when the case was continued at the January term, 1902, upon the filing of the amended counts to the declaration.   All costs of that term were adjudged against plaintiff except the witness fees, and these the court ordered should abide the result of the suit. The terms to be imposed upon granting the continuance, which was done on motion of defendants, rested largely in the sound discretion of the court.   There is no showing made by defendants as to the number of witnesses in attendance, the amount of their fees, nor any reason why the costs of their attendance should be taxed against plaintiff, except that after the trial was entered upon, plaintiff amended his declaration, and on this account, defendants asked for and were allowed a continuance of the case.   In the absence of any other showing we are not prepared to say there was any abuse of discretion in the judgment and order of the court as to the witness fees for that term.

The evidence shows that when, in 1895, defendants cut the artificial channel along the right of way a little way west of Jones' east line, in section 35, and stopped it at an old channel of Crow creek, Jones complained that this would ruin his land, as the outlet was insufficient to carry off the water which would be brought down the artificial channel, and requested the railroad company to extend the channel along the right of way down to bridge 195, which crossed the channel of Crow creek.   It further appears that afterward, when the railroad company had decided to so extend the artificial channel, plaintiff bid on the work; and these things, it is claimed, bar him from recovering any damages resulting from such construction of the artificial channel.   We do not think so.   It was neither unnatural nor unreasonable for plaintiff to conclude that stopping this artificial channel in the eastern part of his land, more than half a mile from where its outlet was into the creek at the railroad bridge, with but a ten-foot ditch to carry it there, would much more seriously injure him than would the extension of the channel fifty feet in width, on down to the creek.   Under

this belief, which we think was entirely justified, plaintiff requested the company to extend the channel, and put in a bid for the construction of the work. It does not appear that the plaintiff was in anywise responsible for the width or depth of the ditch or the manner of its construction, and in our opinion the trial court committed no error in holding this to be no bar.

When the railroad was constructed plaintiff conveyed to the railroad company the right of way through his lands in section 34, and it is contended that the consideration for such conveyance, by law, included all damages, present and prospective, to the balance of the land. Undoubtedly the law is the same where the right of way is conveyed by a deed, as where it is condemned. In Atkins v. Bordman, 2 Met. 463, it was said: "A grant being made for valuable consideration, it shall be presumed that the grantor intended to convey, and the grantee expected to receive, the full benefit of it, and therefore that the grantor not only conveyed the thing specifically described but all other things, so far as it was in his power to pass them, which were necessary to the enjoyment of the thing granted." This language has been repeatedly quoted and approved by our Supreme Court. In the Wachter case, *supra*, it was held that the payment of the compensation or damages allowed the land owner for right of way, would not exempt the company from liability for damages resulting from its negligence, either in the construction, maintaining or operating its road; that the damages taken into account when the right of way is procured, are only such as necessarily and naturally result where due and proper care have been exercised. C., R. I. & P. Ry. Co. v. Smith, 111 Ill. 363; Tinker v. City of Rockford, 137 Ill. 123; C., C., C. & St. L. Ry. Co. v. Pattison, 67 Ill. App. 351; J. N. W. & S. E. R. R. Co. v. Cox, 91 Ill. 500. Applying the principles announced by these authorities it is clear that the conveyance of the right of way by plaintiff could not operate to bar him from maintaining an action for damages for the causes set forth in the declaration. They are, that defendants wrongfully

obstructed a natural watercourse which drained his lands, by building an embankment across it.    The right to do such an act was not " necessary to the enjoyment of the thing granted," and did not pass to the railroad company by the deed.

The trial court held the measure of damages to be the rental value of the land, and we believe this was correct. The fact that small portions of it were, for a year or two of the time damages were claimed for, rented for grain rent, could not alter the rule.

It is further contended that the court erred in the admission of testimony for plaintiff and the exclusion of testimony offered by defendants.    The chief complaint on account of the admission of testimony is, the allowing oral testimony of plaintiff as to the ownership of the land and the introduction of six photographs taken just a few days before they were offered in evidence.

On the trial plaintiff was asked if he owned the land described in the declaration and the court permitted him, over the objections of defendants, to answer the question. On cross-examination defendants' counsel asked him particularly about when he became the owner of these lands, and the testimony abundantly shows that he had been in possession of them for a long period of time claiming to be the owner.    If there was error in permitting the question and answer above referred to, it was cured by the further testimony in the case, which sufficiently and properly proved title to sustain the action.    Gordon v. Dickison, 131 Ill. 141; Davis v. Easley, 13 Ill. 192.

The testimony showed that the conditions at the time the photographs were taken were substantially the same as a year before.    We do not think the introduction of these photographs was calculated to injure the defendants, and while they might well have been rejected, allowing them to be received was not reversible error.

The court sustained objections to questions asked certain witnesses who had long been acquainted with the lands of plaintiff and lands in that vicinity, as to whether in their

opinion, the artificial channel made by the railroad company was in anywise responsible for the condition of plaintiff's land, and this, it is urged, was error. An examination of the testimony of all such witnesses will disclose that they were permitted to and did testify fully as to what, in their judgment, caused the wet condition of plaintiff's land; giving, among other causes, the Copperas creek dam, clearing away forests, and increased drainage into the channel of Crow creek from lands as they were brought into cultivation, none of them mentioning anything the railroad had done as causing or contributing to such condition.

It is also complained that a certain expert engineer, Taylor, was not permitted to answer questions as to whether anything the railroad company had done tended to retard the current of, or cause the deposits from Crow creek, or whether they resulted from natural causes, and whether anything the railroad had done was responsible for the overflow and destruction of plaintiff's under-drainage. An examination of the witness' testimony as set out in the abstract, shows that he testified fully on all these propositions. He was permitted to give his opinion as to the effect of raising the water in the river by the Copperas creek dam, in causing deposits in and filling up the creek by retarding the flow of water therein; also to state that there was nothing in the construction of the channel or railway to retard the current of the creek; that he did not see anything the railroad could do to improve the drainage; and to give his opinion that the company "could do nothing further to improve the roadbed or for the protection of the adjoining land that has not been done." To have permitted the witness to answer the question to which objections were sustained would have been mere repetition, and no error was committed in sustaining the objections.

Defendants' position with reference to the age of the Atchison, Topeka and Santa Fe Railway Company and its responsibility for the injuries complained of in this case,

made the petition for removal to the federal court of a cause between the same parties in the early part of 1901, competent, and it was properly admitted in evidence.

What we have said as to defendants' liability for a continuing injury disposes of the question raised by defendants as to the statute of limitations, and renders unnecessary any further discussion of the subject here.   On the trial some proof was admitted of conditions prior to five years next preceding the commencement of the suit.   It was almost inevitable that this should be so, but the court instructed the jury, at the request of both parties, that if they found for the plaintiff, they should not allow any damages except such as the evidence showed had accrued within the five years preceding the commencement of the suit.   A similar question was involved in the Schaffer case, *supra*, and the court held it was no ground for reversal.

We come now to a discussion of one of the features of this case which, to our minds, renders necessary the reversal of the judgment.   The fifth and sixth additional counts of the declaration, charge the same things in somewhat different language, namely, the obstructing by defendants of a natural ditch, drain, trench or channel which had for many years flowed in its natural channel through, over and across plaintiff's lands, affording ample outlet for his drainage and into which he had drained his said premises.   These counts have reference to lands in section 34, and we do not believe the allegations of plaintiff's declaration as to a natural waterway being obstructed are sustained by the evidence.   We have read all the testimony on this subject, both from the abstract and the record and can reach no other conclusion than that the obstruction complained of was to an artificial ditch, made by plaintiff himself, and into which he had drained his lands.   Plaintiff so testifies, himself.   True, on direct examination he spoke of it as a branch where it crossed the railroad right of way.   On cross-examination the following questions were asked and answers given:

"Q.   You say at the time the railway built that fill

through there that they cut off some kind of a creek. What creek was that? A. That was a large ditch I dug myself so as to enable me to drain that land.

Q. That was an artificial ditch you dug there to give you an outlet? A. It was a good substantial ditch.

Q. That's what I say, it was an artificial ditch you dug there to give you an outlet, wasn't it? A. That's what I dug it for."

The only understanding we can get from this testimony, as well as the testimony of the other witnesses who testified on that subject is, that it was an artificial ditch where the railroad crossed it, wholly constructed by plaintiff for the purpose of concentrating the waters from his lands and discharging them into some outlet on the north side of the railroad. If we are correct in our understanding of the evidence it needs no argument or citation of authorities to establish that no recovery can be had, under the allegations in this declaration, for damages alleged to have resulted from obstructing this ditch by the railroad company. And as in the state of this record we are unable to say how much, if any, of the damages allowed by the jury were on account of this obstruction, we are of the opinion the court erred in refusing the instructions asked by defendants, that plaintiff had not made out his case under the fifth and sixth counts of the declaration, and that as to those counts they should find for the defendants.

On the trial, defendants introduced a witness, Davidson, who testified that he was seventy-six years old, had been a surveyor fifty years, had made tile drainage a special study and made surveys for more than 700 miles of tiling. He stated he had examined the lands in section 35 and surveyed and measured them to determine the practicability of draining the premises by tiling into the south branch of Crow creek. He exhibited a plat or plan for such drainage which he testified he had made from actual surveys and measurements and that it was correct. Defendants then offered to prove by him that it was practicable at a reasonable expense to tile the premises into the south branch of the creek and render them fit for ordinary farming pur-

poses.   They also offered the plat in evidence.   The court sustained objections to these offers and refused to allow the witness to testify or the plat to be introduced.   In this we believe the court erred.   Undoubtedly the law is, and it is so conceded by counsel for plaintiff, that where the suit is for a permanent injury to land it is proper to take into consideration whether the injury could be obviated, in whole or in part, by a reasonable expenditure, in removing the obstruction.   It is insisted, however, that this rule does not apply where it is sought to recover damages to crops, or use and occupation resulting from a continuing nuisance. We are unable to see any reason for this distinction and to our minds the authorities do not sustain the contention. We believe the law to be that if the plaintiff could by a reasonable expenditure under the circumstances, in the exercise of reasonable diligence, by work on his own land, have lessened the damages or obviated them in whole or in part, it was his duty to have done so.   In such case the measure of damages would be the loss sustained before he could in the exercise of reasonable diligence have abated the nuisance, together with all cost and expense of abating it.   The authorities seem to be unanimous that in an action for the recovery of damages for a breach of contract, it is the duty of the injured party to use reasonable diligence and prudence to avoid unnecessary damages.   The rule seems to be the same in actions for tort.   In 8 American and English Ency. of Law (2d Ed.), 605, it is said :

" As it is the duty of a party injured by a breach of contract or tort to make reasonable effort to avoid damages therefrom, such damages as might by reasonable diligence on his part have been avoided are not to be regarded as the natural and probable result of the defendant's acts. There can be no recovery, therefore, for damages which might have been prevented by reasonable efforts on the part of the person injured."

In 3 Sutherland on Damages, page 420, the author says :

" The fact that the plaintiff might have abated the nuisance caused by obstructing a ditch, but did not, it being necessary to go upon the defendant's land for that purpose,

will not affect his right of action or the damages. Where, however, the plaintiff has access to the nuisance, or the means or opportunity of avoiding or mitigating the injury it causes, it is his duty to abate the nuisance, or to take the proper measures for preventing or lessening the damages therefrom. Where this duty arises, damages will be limited to such as are, or would be suffered if the duty had been performed, added to the expense incident to the performance of that duty. If a plaintiff, having the opportunity, without incurring a liability for trespass, neglects to exercise ordinary care and diligence to prevent injury, he may be denied any recovery, on the ground of contributory negligence. The plaintiff is not obliged, however, to take notice of defendant's threat to commit a wrong, and thereupon to take measures to prevent damages; it is sufficient for him if he exercises ordinary care in the preservation of his property, after he has knowledge that wrong has been done."

Loker v. Damon, 17 Pick. 284, was a suit in trespass for removing a few rods of fence, and it was there held, the cost of repairing the fence and not the injury to the following year's crop, caused by cattle passing through the gap, was the proper measure of damages in favor of plaintiff who knew the fence was down and neglected to repair it.

In Hogle v. New York, etc., R. R. Co., 28 Hun, 363, it was held that in an action to recover damages occasioned to plaintiff's woods by a fire alleged to have been occasioned by the negligence of the defendant, if the plaintiff when he discovered the fire neglected to use reasonable, practicable means to suppress it, he could not recover for subsequent damages.

Simpson v. Keokuk, 34 Iowa, 568, was a suit by plaintiffs against the city to recover damages caused their lot by water accumulating thereon in consequence of the negligent manner in which the street gutters were constructed. The court say :

"If the plaintiffs by the use of ordinary diligence and efforts, and at a moderate expense, might have prevented the damage, it seems necessarily to follow that their negligence contributed to the injury; and this, upon a well settled rule, would defeat the plaintiffs' recovery."

This was approved in Van Pelt v. City of Davenport, 42 Iowa, 308.

In Walrath v. Redfield, 11 Barb. 368, the plaintiffs sued defendants for damages resulting from the construction of a dam a short distance below plaintiffs' mill which caused water to flow back upon their mill and rendered it incapable of use till the dam was carried off some two years after it was constructed. One element of damage claimed by plaintiffs was injury to a large number of logs on their mill yard during the time they were prevented from operating the mill. The court instructed the jury:

"Whether the damage to the logs resulted in consequence of the wrongful acts of the defendants in depriving the plaintiffs of the lawful use of their mill and water privileges, was a question which the court would leave to the jury; and that if the jury found that issue for the plaintiffs, then they should take that item of damage into account in making up their verdict; otherwise not."

This, on appeal, was held to be erroneous and the case reversed and remanded, "for the want of evidence that the damages claimed did necessarily result from the act of the defendant; that it did not result from the negligence of the plaintiffs properly to care for and dispose of their property in time to prevent loss from a depreciation in value. In actions upon contracts it is well settled that a party complaining of a breach of the contract can only recover the damages necessarily resulting from such breach and he can not conduct in such a manner as to make the damages unnecessarily burdensome. The same rule should apply to actions of tort where there has been no willful injury to the right of another. The plaintiffs in this action, if they had an opportunity, should have procured their logs to be sawed at other mills and thus prevented the injury of which they complain; and if they had no opportunity to do so they should have given some evidence of it upon the trial.    *    *    * If the plaintiffs by using reasonable precautions, and such as would ordinarily be employed by a prudent man in the preservation of his property, could have prevented the loss by the injury to the logs, they can not recover such loss in this action."

648 APPELLATE COURTS OF ILLINOIS.

To the same effect are Chase v. N. Y. C. R. R. Co., 24 Barb. 273, and Emery v. City of Lowell, 109 Mass. 197.

Plaintiff was permitted to testify that he had attempted to drain his land by tiling it into the south fork of the creek, but that it was not successful and did not drain it. If this was proper, why should not defendants' testimony have been heard as to whether it was practicable, at a reasonable expense, to have accomplished this successfully? If it were true that this could be done, it seems to us plaintiff's remedy would be complete when he was allowed all damages that had accrued before he could, in the exercise of reasonable diligence, have abated the nuisance, and in addition thereto, all costs and expenses incurred in such abatement. In our opinion, therefore, the court erred in not admitting this testimony.

Complaint is made of the giving of instructions for plaintiff and refusing instructions asked by defendants. Seven instructions were given on behalf of plaintiff, and the unreasonable number of fifty-two asked by defendants. Of this number the court gave sixteen. It would be impossible for us to review the rulings of the court in giving five of plaintiff's seven instructions complained of, and refusing thirty-six of those asked by defendants, without making this opinion unreasonably long, and we shall not attempt to do so.

For the errors indicated the judgment is reversed and the cause remanded.