John J. Stock, Appellee, vs. James H. Mitchell, Appellant.

*Opinion filed December 21, 1911.*

1. Dower—*when dower is barred under section 15 of Dower act.* Barring of dower under section 15 of the Dower act is not limited to cases where there is difficulty between husband and wife and an alienation and one elopes with another person and commits adultery, but applies also where a husband or wife leaves the other and commits adultery, unless the offense is subsequently condoned and the parties again dwell together.

2. Same—*what makes a prima facie case barring dower under section 15 of the Dower act.* Proof that the husband left his wife several years before she died and that they never dwelt together again; that the husband, a few days after his wife's death, was living in a lodging house with another woman to whom he was not then married, and that such woman had been introduced by him as his wife before his wife's death, makes a *prima facie* case which will bar dower under section 15 of the Dower act, where the husband, although having full opportunity, does not meet or overcome the *prima facie* case in any way.

Appeal from the Circuit Court of DeWitt county; the Hon. W. G. Cochran, Judge, presiding.

Edward J. Sweeney, Herrick & Herrick, and E. B. Mitchell, for appellant.

John Fuller, and L. O. Williams, for appellee.

Mr. Justice Cartwright delivered the opinion of the court:

Lillian Stock died intestate at Clinton, DeWitt county, on November 13, 1908, leaving John J. Stock, the appellee, (her husband,) and James H. Mitchell, the appellant, (her brother,) and a niece, Aleta Goodrum, daughter of a deceased brother, her only heirs-at-law. She was the owner of a farm in DeWitt county, and as she left no child or descendant the appellee became entitled to an undivided one-half interest in the farm as an heir. He filed his bill in

this case in the circuit court of DeWitt county for the assignment of dower in the other half of the farm, making appellant and Aleta Goodrum defendants. The appellant answered the bill, denying the right of appellee to dower, and the issue was referred to the master in chancery, who found and reported in favor of the appellee. The chancellor heard the cause on exceptions to the report and overruled them, and entered a decree awarding dower as prayed for and appointing commissioners to assign the same. From that decree this appeal was prosecuted.

Section 15 of the Dower act provides that if a husband or wife voluntarily leaves the other and commits adultery, he or she shall be forever barred of dower unless they are afterwards reconciled and dwell together. The answer of the appellant alleged that the appellee voluntarily left his wife and committed adultery. The appellee and his wife lived together at Clinton until 1901, when the appellee left his wife and their home and thereafter traveled with a show, called Parker's Amusement Company. He never lived with his wife afterward and only returned to the funeral of her mother, in 1903, when he came in the morning and left in the evening of the same day, and an occasion in 1904 or 1905 when he was at the place one day. They exchanged some letters, but their number or contents were not shown, except that shortly before her death she said that he wrote her he would sign a deed if she sold the farm. She sent him money at different times, and in October, prior to her death, he sent her $20, but the witness said that she sent him twice as much. The indications are that the letters were mere business letters. After her mother's death she lived alone in Clinton, having a companion at different times, and the last three years she had the same companion, and whenever the girl living with her was away she went to a hotel at night to sleep. She had a lingering illness and was confined to her house with consumption for nearly a year before her death. When she died a telegram

was sent to the appellee at Roanoke, Virginia, which he answered, saying it was impossible to come and to spare no expense for burial. He left his wife and never lived with her after 1901, and never even returned or saw her after 1904, or, at the latest, 1905.

In the fall of 1908 the appellee was connected with the Francis Ferrari Wild Animal Arena Company,—a trained wild animal show that took along with it other shows. The appellee was running a Katzenjammer Castle, and the show came to Roanoke, Virginia, about October 15, 1908, and opened on a lot on Commerce street, remaining there two weeks, as one witness thought, and about a month according to the recollection of another, after which winter quarters were opened at the Fair Grounds. A witness testified that he met appellee the first week of the show on the Commerce street lot, which would be some time the latter part of October, and that appellee introduced a woman who was with him, as his wife. After the show moved to the Fair Grounds the appellee and the same woman, who was called Mrs. Stock, took two rooms on the second floor of a restaurant and lodging house on Jefferson street, near the said grounds. The keeper of the restaurant and lodging house testified that the appellee and his wife occupied the rooms from the 22d or 23d of November, 1908, until the 5th or 6th of April, 1909. They lived together there as husband and wife, the woman doing the cooking and being known as Mrs. Stock. A police sergeant testified that the tents were put up on Commerce street in the early fall of 1908 and remained there something like a month and then removed to the Fair Grounds, and that appellee introduced the woman as his wife the latter part of February or first of March, 1909. A witness who drove a bread wagon testified that he delivered bread at the rooms occupied by appellee and the woman every day for two or three months, beginning two or three days after they left Commerce street. It was generally understood by relatives of the

woman that she had been married to the appellee in 1905 or 1906, but the appellee proved by his marriage certificate that his marriage with her took place on March 6, 1909.

The appellee offered no evidence in contradiction of the testimony for the defense, and his counsel rest their case upon the legal proposition that the statute barring dower only applies where there is a difficulty between husband and wife and an alienation and one elopes with another person and commits adultery, and upon the fact that the evidence did not show the existence of adulterous relations prior to November 13, 1908, when the wife died. The statute only requires that a husband or wife shall leave the other and commit the offense, by which dower is barred unless the offense is subsequently condoned and the parties dwell together. That the appellee left his wife and never lived with her for a number of years is not disputed and the parties never dwelt together afterward. The appellee was openly living with the other woman in the lodging house nine days after the death of his wife, and when, according to the certificate offered in evidence by him, they were not married. The evidence of one witness was that the appellee introduced the woman as his wife when the show was on Commerce street, the latter part of October. The police sergeant was looking after the matter of a license for the show and the show people were asking for delay, and if his recollection was correct that the show was on Commerce street for a month, the time of the introduction, according to the other witness, was certainly before the death of the appellee's wife. The evidence made a *prima facie* case under the statute, which the appellee, with full opportunity, did not meet or overcome in any way. We think the chancellor was not justified in ignoring this evidence and finding in favor of the appellee.

The decree is reversed and the cause is remanded to the circuit court, with directions to dismiss the bill.

*Reversed and remanded, with directions.*