(No. 20166.— )
JOHN W. LANDRETH, Appellee, *vs.* JOHN CASEY, Appellant.

*Opinion filed October 25, 1930.*

G. F. TAYLOR, for appellant.

WRIGHT & WRIGHT, for appellee.

Mr. JUSTICE ORR delivered the opinion of the court:

Ellen Landreth died testate in Effingham county on March 30, 1929, aged seventy-two, owning certain lands in that county. On June 3, 1898, about thirty-one years prior to her death, when she was forty-one years of age, she married the appellee, John W. Landreth, then thirty-one years old, who survives her. No children were born to their marriage. By her last will and testament, which was duly probated, she bequeathed only $50 to her husband and gave the bulk of her personal and real estate to a nephew, John Casey, the appellant. The husband afterwards renounced the will and elected to take in lieu of dower one-half of the personal and real estate in fee under the statute. (Smith's Stat. 1929, chap. 41, sec. 12.) A suit for partition of the lands belonging to his deceased wife was brought by Landreth in the circuit court of Effingham county. Casey answered the bill, denying the right of Landreth to maintain his bill for partition and alleging that he had voluntarily deserted his wife and committed adultery after their marriage and before her death and under section 15 of the Dower act had forfeited all rights as surviving husband. Two issues of fact were made up and submitted to a jury. The first, "Did the complainant, John W. Landreth, leave his wife, Ellen Landreth, and commit adultery after their marriage and before the death of said Ellen Landreth?" to which the jury answered "yes." The second, "Did the complainant, John W. Landreth, and his wife, Ellen Landreth, afterwards become reconciled and dwell together?" This was answered "no" by the jury. Landreth then filed a motion to set aside the finding and verdict of the jury and for a decree as prayed in the bill. The court took the matter under advisement and after argu-

ment set aside the verdict and entered a decree for Landreth, ordering a partition of the lands between Casey and Landreth. To this decree Casey excepted and prayed an appeal to this court.

From the evidence it appears that for about five years subsequent to the marriage Landreth and his wife lived together upon her land. Shortly afterwards Landreth went to Fayette county, near Vandalia, where he worked in the timber and lived for four or five years with a woman named Nora Mansfield, by whom he had a child. Later, the evidence shows that he ceased living with the Mansfield woman and cohabited with one Sarah Sapp for nearly seven years, during which time he moved from Fayette county to Decatur. Other women are shown to have been keeping house for him in Decatur, where he worked after his relations with Sarah Sapp came to an end. During all the intervening years of his residence in Fayette county and Decatur, which covered the time when he first left his home up to within a few days of his wife's death, the proof also shows that Landreth visited his wife regularly at about six months' intervals, generally around July 4 and Christmas, staying from two days to a week on each visit. His conduct towards her on all such visits was that of an affectionate and considerate husband. Several witnesses, including the priest who administered the last rites, testified that she loved him and made no complaint against him. His working away from home was with her knowledge and apparent consent and approval, as she stated that she could not expect him to leave a good job and stay in a small village with her where he would have nothing to do. There is only slight evidence that she had any knowledge of his wrongdoing, and two letters written by her to him, dated January 1, 1929, and March 29, 1929, the last being the day prior to her death, were in evidence and disclosed nothing but a fond marital relationship. Landreth had requested her to come to Decatur and live there, where he

could take care of her; and she had stated to witnesses at different times that she hoped to do so. The will in evidence was dated February 19, 1929, and on February 26, 1929, a bill was filed by testatrix for a divorce from Landreth, alleging desertion. The bill contained no allegation of adultery or other improper conduct. After the filing of this bill the evidence shows that Landreth again visited his wife and that there was no discord between them, and that she subsequently also wrote him a letter couched in endearing terms and told different witnesses that she dearly loved him. The record also contains no direct evidence of adultery by Landreth for a period of about ten years prior to his wife's death.

Section 15 of the Dower act provides that if a husband or wife voluntarily leave the other and commit adultery, he or she shall be forever barred of dower unless they are afterwards reconciled and dwell together. The one question presented by this appeal, as stated in appellant's brief and argument, is, Was the conduct of Landreth a bar to his dower in the lands mentioned in the bill? The inquiry is therefore narrowed down to the question whether, under the facts presented in the record, Landreth has forfeited his right of dower by reason of section 15 of the Dower act above mentioned. The statute is couched in plain language. This language is not ambiguous, and it is obvious that two things must combine to constitute the bar: (1) A voluntary leaving by wife or husband, and (2) the commission of adultery. Further, under the statute, this bar may be removed if the couple are afterwards reconciled and dwell together. Unless the husband or wife "voluntarily abandon" the other, the question of adultery, under this section, is wholly immaterial. (*Gordon* v. *Dickison,* 131 Ill. 141.) Neither adultery without a voluntary leaving, nor a voluntary leaving without adultery, will bar dower rights under this statute, as both must be proven. In *Gordon* v. *Dickison, supra,* this court used the terms "leave" and

"abandonment" interchangeably, as having the same meaning. By common usage and acceptation the word "leave," as used in this statute, does not mean a temporary absence or a short stay away from home on business or pleasure with the intention of returning, but the word implies a willful departure with intent to remain away. Since the intention of the party who has left the other is in such case a deciding factor, no hard and fast rule can be laid down and such intention must be gathered in each case from the acts and expressions of the parties. Many instances of happy married life may be found where the wife and husband have lived apart for months and years for reasons satisfactory to themselves but with no intention of giving up their marital relation. Living separate and apart by mutual consent or agreement does not constitute willful desertion or entitle either party to a divorce on that ground under the laws of this State.

The case of *Stock* v. *Mitchell*, 252 Ill. 530, cited by appellant, was also a case involving this same question. In that case the husband left his wife and home in 1901 and returned only twice in seven years—once to the funeral of his wife's mother in 1903, when he came in the morning and left in the evening of the same day, and once in 1904 or 1905, when he was at the place one day. He had not seen his wife for over three years prior to her death, in 1908. He had not dwelt with her since 1901, or for over seven years, during which period it was shown he was living in open adultery up to within a few weeks prior to the death of his wife. In that case the husband offered no evidence in his own behalf, and the court held that a *prima facie* case had been made out under the statute, which the husband, with full opportunity, did not meet or overcome in any way. In the case at bar Landreth lived and cohabited with his wife at fairly regular intervals during their entire married relation and their mode of living was a matter of mutual understanding between them, which the wife made no effort

to change. When requested by her husband to join him, she said she preferred to remain in Edgewood on account of her property there and her advanced age. There is no proof of adultery by Landreth for at least ten years prior to his wife's death. In defense of his rights he also produced eleven witnesses, besides documentary evidence, in his trial in the circuit court. By this comparison it will be seen that this case and the case of *Stock* v. *Mitchell, supra,* are easily distinguished.

In the present case the evidence clearly shows that Landreth and his wife lived together happily and that he was very attentive to her on his occasional visits at home. For about twenty-five years he had visited her at fairly regular intervals. She had not complained about his absence to her neighbors and friends but had often told them she loved him and wanted to move with him and had written him endearing letters within a short time before her death. It is true that for about fifteen years of their married life he had indulged in sexual relations with two other women, but during the last ten years prior to his wife's death there is no proof that he had committed any immoral acts. While his earlier acts of adultery are inexcusable, yet the last clause of section 15 of the Dower act eliminates the forfeiture of dower where the offense is subsequently condoned by reconciliation and the parties dwell together. In our opinion the question of a reconciliation is of little importance in this case, as the evidence failed to show that there had ever been a leaving or abandonment by the husband in any such sense as would forfeit his right of dower and thus make a reconciliation necessary.

The decree of the circuit court of Effingham county was correct and must be affirmed. *Decree affirmed.*