## Samuel A. Maxwell, Appellee, v. Janet H. Maxwell, Appellant.

### Gen. No. 10,192.

Opinion filed March 9, 1948.

Released for publication March 30, 1948.

POPPENHUSEN, JOHNSTON, THOMPSON & RAYMOND, of Chicago, for appellant; CARL SCHULZ and ADDIS E. HULL, both of Chicago, of counsel.

DON A. WICKS, of Woodstock, for appellee.

MR. JUSTICE DOVE delivered the opinion of the court.

Samuel A. Maxwell herein referred to as the plaintiff, filed his complaint in the circuit court of McHenry county on August 30, 1946, charging his wife, Janet H. Maxwell, herein referred to as the defendant, with desertion and praying for a decree of divorce. Defendant filed her answer denying the allegations of the complaint and filed a counterclaim charging the plaintiff with desertion. After the issues were made up upon the original complaint and counterclaim, a hearing was had before the court without a jury resulting in a decree finding that on August 20, 1945, defendant wilfully deserted the plaintiff without any reasonable cause and granting the plaintiff a divorce and dis-

missing the defendant's counterclaim for want of equity. To reverse this decree the record is brought to this court for review by an appeal on behalf of the defendant and counterclaimant.

The evidence discloses that the parties were married on July 3, 1943, in New Orleans, Louisiana. At that time plaintiff was in the United States Coast Guard stationed in New Orleans and the defendant, a registered nurse, was serving in the United States Army Nurse Corps, stationed at Gulfport, Mississippi. In October 1944, defendant was discharged from the military service. At the time of her discharge, plaintiff was stationed at Bay Shore, Long Island, New York where the parties rented a house, established a home and lived together as husband and wife. On April 2, 1945, a daughter, Helen Louise Maxwell, was born and she is the only issue of the marriage. About the middle of May 1945, the plaintiff received a twenty-one day leave and they left Bay Shore to visit their parents. The plaintiff's parents lived in Woodstock, Illinois and the defendant's parents lived at that time in Superior, Wisconsin across the river from Duluth, Minnesota and shortly thereafter they moved to Duluth.

After leaving their home in Bay Shore they came to Woodstock and visited at the home of the parents of the plaintiff and then went to the home of the defendant's parents in Superior, Wisconsin. After spending a short time there plaintiff returned to his parents' home in Woodstock and when his leave expired he returned to Bay Shore and shortly thereafter sold the household furnishings.

In August 1945, plaintiff sent the defendant fifty dollars and she returned to Bay Shore, leaving the baby with her parents and the parties lived together there for a few days as husband and wife. According to the testimony of the defendant she suggested to the plaintiff that they continue to live together at a hotel

there for at least a short time, stating that she "had saved $500.00 and that if they run short of money she could always work." The plaintiff refused and told her she would have to remain with her parents for quite a while after he got out of the service. Plaintiff did not specifically deny this but said that the defendant told him that she did not wish to remain in Bay Shore, that she was employed in a physician's office at Duluth at a substantial salary and preferred to go back there and work and intended to establish a residence there and procure a divorce from him. On Monday, August 20, 1945, defendant left Bay Shore by train for the home of her parents and upon her arrival there resumed her work. Thereafter the parties corresponded and had several long distance telephone conversations.

Plaintiff was released from service in December 1945. He returned to the home of his parents in Woodstock and from there telephoned his wife. She asked him to come to Duluth and he promised to do so before Christmas but did not go until March 1946. Upon that visit they did not live together and no request was made by the plaintiff that defendant live with him. They discussed financial matters.

The defendant's testimony is that she stated to the plaintiff that she had been working supporting herself and baby and inquired what he was willing to do. He promised to send her some money and asked her to fly down week ends and visit him and stated that if she would, he would meet her in Chicago and concluded: "Mother won't know I am meeting you. That is the only way we can do it. Mother is very insistent we get a divorce." This evidence stands undenied in this record. Plaintiff returned to Woodstock but did not send her any money and she did not leave Duluth.

Early in June 1946, the plaintiff again went from Woodstock to Duluth. He had previously consulted his attorney about procuring a divorce and an entry

of appearance had been prepared. He met his wife at the office where she was employed and requested her to sign the entry of appearance and she refused. He testified: "I did not let her know I was coming. I just called her out of a clear sky. I just went up to see her to see what she was going to do about getting a divorce or coming back to me or what was going to happen. I didn't know what the score was so I went up there to find out and she said, 'Well, we would call her father and go over to a lawyer's office, so we went over.' " The discussion that there took place had reference to a settlement which was not acceptable to the plaintiff and he returned to Woodstock.

The complaint in this cause was filed August 30, 1946. It charged that the defendant wilfully deserted him on August 27, 1945, without any reasonable cause and has persisted in such desertion for the space of one year and that she continues to absent herself from the plaintiff. The evidence is that in May 1945, plaintiff had a twenty-one day leave and they, with their baby daughter, left Bay Shore, the only home they ever had and came to Woodstock and Superior, Wisconsin and visited in the homes of their respective parents. At the expiration of his leave he returned to service and she and the baby remained with her parents. This arrangement was agreeable to both parties. Plaintiff testified: "I took her to visit my parents here in Woodstock. We stayed with them about a week. Then I took her to the home of her parents in Superior, Wisconsin. I stayed with her at her parents' home there. I can't remember any discussion. After I stayed at Superior for a couple of days I came back to Woodstock and stayed there, leaving on June 10. Then I went back to Bay Shore."

On August 16 or 17 defendant returned to Bay Shore. Plaintiff sent her money for the trip. The parties lived together as husband and wife for three or four days and plaintiff's testimony is that defend-

ant said she would rather stay in Duluth and work and didn't want to remain in Bay Shore and that he said: "If that was the way she wanted, that was alright with me."

All of the evidence in this record leads to but one conclusion and that is that when plaintiff returned to Bay Shore on June 10, 1945, and left his wife and baby at her parents' home and when she left Bay Shore on August 20, 1945, the arrangement was entirely agreeable to both parties. The allegation of the complaint that defendant wilfully deserted the plaintiff on August 27, 1945, is not sustained by the evidence, neither is the allegation of the counterclaim, which charges that the plaintiff deserted defendant and his child on August 20, 1945, sustained by the evidence. The parties left the only home they ever had together in May 1945. Defendant returned to Bay Shore in August and after living with plaintiff for a few days left with his approval and consent and returned to the home of her parents in Duluth. Plaintiff was at that time in the military service of the United States and so remained until the following December. After his discharge he never offered his wife a home anywhere. His only home since his discharge has been with his parents and only eight months had elapsed after his release from Coast Guard duty and the filing of the instant complaint.

Neither a husband or wife in this State is entitled to a divorce on the ground of desertion where the alleged desertion took place with the consent of the other spouse. To constitute desertion the living separate and apart must be against the will of the party claiming desertion. Where the parties live separate and apart by mutual consent it does not constitute desertion on the part of either and neither party is entitled to a divorce on the ground of desertion. (*Lyons v. Lyons,* 231 Ill. App. 568; 27 C. J. S. Divorce, Sec. 38; *Landreth v. Casey,* 340 Ill. 519, 523; *Larimore v. Lari-*

*more,* 299 Ill. App. 547.) In 19 C. J. 64, sec. 120 it is said that where the complainant in a divorce proceeding has, either expressly or impliedly, consented to the original separation or its continuance, and has not revoked such consent, he is not entitled to a divorce for desertion.

It was the primary duty of the plaintiff to provide a home for defendant. He did not do so and our conclusion from this record is that both the parties hereto were living at the time this suit was instituted, where they were, not against the will of the other spouse but with the consent of the other spouse. Defendant could not be guilty of desertion within the meaning of our divorce act as long as she continues to make her home with her parents in Duluth if her living there, in the first instance, was not against the will of the plaintiff and if while living there, plaintiff has not provided or offered to provide any home for her at any other place. Neither can plaintiff be held to have deserted the defendant, if his living in Woodstock with his parents, was and is with her consent and she has never interposed any objection to her husband's living separate and apart from her.

The decree of the circuit court dismissing the counterclaim for want of equity is affirmed. The decree granting the plaintiff a divorce is reversed and this cause is remanded to the circuit court with directions to enter a decree dismissing the complaint at the costs of the plaintiff.

*Decree affirmed in part and reversed in part and cause remanded with directions.*