Ann Bramson, Appellant, v. Leo Bramson et al.,
Appellees.

**Gen. No. 46,496.**

First District, First Division.
January 31, 1955.
Rehearing denied February 21, 1955.
Released for publication February 23, 1955.

Gariepy & Gariepy, of Chicago, for appellant; Fred A. Gariepy, and John Spalding, both of Chicago, of counsel.

I. J. Berkson and Jacobson, Nierman & Silbert, all of Chicago, for appellees; David Silbert, and Arthur Altschul, both of Chicago, of counsel.

MR. JUSTICE NIEMEYER delivered the opinion of the court.

Plaintiff appeals from a decree dismissing for want of equity her amended complaint for separate maintenance from the principal defendant, Leo Bramson, hereinafter referred to as defendant, and to have herself adjudged and decreed an equal partner with defendant in the business operated by him under the name "Bramson's," and granting a divorce to defendant on his counterclaim.

Plaintiff and defendant were married December 25, 1928. Two children were born—Joan and David—aged respectively 17 and 13 years in November 1950 when the amended complaint was filed. The parties separated on or about August 6, 1948 following a quarrel in Florida. Plaintiff returned to the family home in Chicago where she and the children have lived continuously through the entry of the decree appealed from. September 13, 1948 she filed suit for separate maintenance. On April 19, 1950 that suit was voluntarily dismissed without prejudice to her rights, and the present suit was immediately instituted. The amended complaint consists of two counts. The first count relates to plaintiff's claim of partnership in defendant's business. Defendant's sisters, Anita Edlin and Beverly Berkson, are defendants to that count. The second count is for separate maintenance. October 3, 1951 defendant filed a counterclaim for divorce, alleging desertion by plaintiff.

The issues presented by the first count were referred to a master in chancery, who found at the close of plaintiff's evidence that she had failed to establish a prima facie case, and recommended that count one of the amended complaint be dismissed for want of equity. In June 1953 a hearing was had on plaintiff's exceptions to the master's report and on the issues raised by count two of the amended complaint and by the counterclaim, resulting in a decree entered November 9, 1953 in which the court overruled the exceptions to the master's report and found that plaintiff was not

251

a partner in Bramson's and had no right, title or interest in any property or assets of the defendant; that plaintiff had failed to sustain the amended complaint and defendant had sustained his counterclaim. Accordingly plaintiff's amended complaint was dismissed for want of equity and defendant was granted a divorce. Defendant was ordered to pay to plaintiff certain sums for alimony, support and maintenance for herself, for the support and maintenance of the minor child—David, for attorneys' fees and for expenses in taking depositions, etc.

Within 30 days plaintiff filed a petition to vacate the decree. Defendant moved to dismiss plaintiff's petition. On March 3, 1954 an order was entered denying defendant's motion to dismiss plaintiff's petition and denying plaintiff's motion to vacate the decree as to all provisions of the decree except "the allowance of alimony, support and maintenance of plaintiff, and attorneys' fees and costs," and further ordering that the part of the decree "dealing with the subject of alimony, support and maintenance of plaintiff, and attorneys' fees and costs" be vacated, that the cause be set for hearing on the issues relating to these matters and, "during the pendency of said cause, that cross-plaintiff shall continue to pay to the plaintiff the sums of money awarded in the decree of November 9, 1953." Further pleadings as to the allowance of alimony, support and maintenance of plaintiff, attorneys' fees and costs were filed by the parties. These issues are pending in the trial court.

May 27, 1954 plaintiff filed a notice of appeal from the decree and the order of March 3, 1954, except the parts of the order which vacate and set aside the provisions of the decree "with respect to alimony and attorney's fees for appellant, and direct the payment of alimony and support money pending the further order of court."

■ Defendant and his sisters, appellees herein, filed a motion to dismiss the appeal on the ground that defendant paid and plaintiff accepted three payments of alimony due under the decree on the first days of December 1953, January and February 1954. This motion and a later motion for leave to reply to plaintiff's suggestions in opposition to the motion to dismiss were taken with the case. The latter motion is denied. The rules of court do not permit the filing of replies to suggestions in opposition to motions. The motion to dismiss is also denied. As hereinbefore shown, the original provisions for alimony, attorneys' fees and costs are not a part of the decree appealed from. Defendant has acquiesced in the action of the trial court in vacating the portions of the decree relating to these matters. There is no cross-appeal. Other grounds urged by plaintiff in opposition to the motion need not be considered.

Plaintiff alleges that defendant struck her in September 1944 and severely beat her on August 6, 1948; that on other occasions he struck and beat her and as a result thereof she was compelled to leave defendant on or about August 6, 1948 and has continued to live separate and apart since that date. Defendant alleges in his counterclaim that on August 6, 1948 plaintiff "wilfully deserted and absented herself from him and has continued said desertion and absence for the space of more than one year, . . . all without any reasonable cause."

The following facts are undisputed. In June 1948 defendant and the children went to Palm Beach, Florida to spend the summer. Because of the serious illness of her mother, plaintiff did not join them until Thursday, August 5th. After a quarrel on the 6th plaintiff returned to Chicago by plane the following day. She went to the home at 2608 Lakeview avenue, where she, defendant and the children had lived since September

253

1946. Sunday night defendant returned to Chicago on business. He occupied his daughter's room in the home. Monday night he went back to Florida. Several weeks later he and the children returned to Chicago. The children went to the home on Lakeview avenue and lived with plaintiff continuously thereafter. Defendant did not go with them. He has not been in the home since Monday, August 9, 1948, except to visit the children, and has only remained overnight during the time plaintiff was in the hospital in 1949. He has lived in hotels separate and apart from plaintiff and the children.

The charge of cruelty in September 1944 is not proved. The act of August 6, 1948 is clearly established by the greater weight of the evidence. Plaintiff testified that in a quarrel following her complaint of being tired and wanting to be alone for a few days to rest, defendant hit her in the face with his open hand and struck her in the ribs with his fists. She does not know how many times. She screamed, and Mr. and Mrs. McGaughey, occupants of an adjoining apartment, heard her. Her lips were swollen and her ribs hurt. She is corroborated by the McGaugheys, who testified to the sound of blows, the screams of plaintiff and the sending for the police and a doctor. Mrs. McGaughey testified further that after defendant left she went into plaintiff's apartment and that plaintiff's lips were swollen. Plaintiff is also corroborated by her family physician in Chicago, who testified that he taped her ribs the following Sunday. Defendant testified that upon his objection to plaintiff going to the Versailles Hotel in Miami plaintiff went into a tantrum, screamed for help, cried out as though she was being hurt and brought her hands together to create a sound of blows being struck; that the occupants of an adjoining apartment inquired what was going on and whether the police should be called; that defendant did not lay his hands on plaintiff in any manner. He

254

testified further that he told a lawyer in his group in Miami who attended the taking of depositions that the attack was a faked or simulated attack. He did not know which lawyer, and when asked why the lawyer had not interrogated him during the deposition as to what had taken place in the simulated attack he said he believed the lawyer got instructions from the Chicago attorneys as to what to do. The withholding of defendant's explanation for almost five years is significant. Equally significant is defendant's failure to refer in his brief to this testimony and answer plaintiff's argument concerning it. The testimony is entitled to little credence.

▇▇▇ Defendant testified further that at breakfast in Chicago on the Monday following the Palm Beach quarrel, plaintiff told him she had seen her lawyers and knew her rights; that defendant would be thrown out of the house if he did not get out; that he understood plaintiff's statement to mean that if he did not leave the house he would suffer bodily harm and be thrown out; that he did not live with plaintiff after that because she had threatened him. On appeal defendant abandons this position. Plaintiff argues that defendant's theory is that plaintiff was guilty of constructive desertion by compelling him to leave the home. Defendant says that this is a false premise; that "defendant was granted the divorce on the ground of *actual,* not constructive, desertion" (emphasis defendant's), and "the decree finding desertion by plaintiff was not based on the evidence that plaintiff compelled him to leave, but is fully supported by plaintiff's own proof that she left him and lived apart for the statutory period." The only proof cited in support of defendant's position is the allegation in the amended complaint, hereinbefore referred to, that because of the alleged acts of cruelty plaintiff was compelled to leave defendant and has continued to live separate and apart from him since August 6, 1948. If a question of fact was pre-

255

sented as to which spouse left the other, the allegation in the complaint might tip the scales against plaintiff. But there is no question of fact. The allegation in the complaint is directly contradicted by the testimony of plaintiff and of defendant. To permit the allegation to prevail over the undisputed facts would merely promote injustice. The record does not support a decree based on desertion, actual or constructive. The alleged threat, denied by plaintiff, that defendant would be thrown out if he did not leave the house did not justify defendant in leaving the home and living separate and apart. Webber v. Webber, 349 Ill. App. 154. In order to charge a spouse who by misconduct brings the cohabitation to an end with constructive desertion, he must be guilty of misconduct which would in itself constitute a ground for divorce in favor of the innocent spouse. Coolidge v. Coolidge, 4 Ill.App.2d 205, where authorities are reviewed.

██ The evidence shows that plaintiff is living separate and apart from defendant without her fault; that he left her. There is a direct conflict in the testimony of plaintiff and defendant as to steps taken to effect a reconciliation or willingness to live together. Each denies any offer of the other to resume the marriage relation. Defendant is uncorroborated. Plaintiff is corroborated in some particulars by Joan, the daughter, and by plaintiff's brother. Defendant testified that he had a few letters from plaintiff and that "the tone of these letters looked like it was from a woman who wants to come back, but I don't say requesting an opportunity to try things over again." He testified further that he decided within three or four months after the separation that under no circumstances would he live with plaintiff again, and that he was not at the time of testifying willing to live together or to attempt to restore his previous relationship with his wife. Plaintiff is entitled to a decree of separate maintenance and

to leave to amend the complaint to conform to the evidence.

There is no controversy as to the following facts in the development of defendant's business. In 1932, after several unsuccessful ventures resulting in judgments against him, defendant formed a corporation to sell women's apparel at retail—the business now known as Bramson's. The capital stock was divided, 48 shares to plaintiff, one share to defendant and one share to plaintiff's sister. A store was opened in Oak Park. The business prospered. In 1941, for income tax purposes, the corporation was dissolved and articles of partnership were executed by defendant, plaintiff and J. V. Edlin as equal partners. Defendant was designated as the operating head of the business, with the right and power to do all buying and establish the policy of the business. On or about November 30, 1942 he decided that plaintiff should not be in the business. Without receiving any consideration therefor plaintiff executed an assignment of her interest to defendant dated December 1, 1942. Thereafter defendant transferred a one-third interest in the business to his sister, Beverly Berkson, and J. V. Edlin transferred his interest to his wife, Anita Edlin. A partnership agreement between defendant and his sisters, as equal partners, was entered into November 29, 1944. In 1944 or 1945 a store was opened in Palm Beach, Florida. In 1946 a store was opened in Evanston. This store and the one in Palm Beach were enlarged. In 1952, at the time of the hearings before the master in chancery, a store was being opened in Chicago.

Plaintiff did not claim a partnership in the business until she filed the amended complaint in November 1950. In the first suit for separate maintenance brought by her in September 1948 she alleged that defendant owned and operated a business known as Bramson's, and Bramson's Fashion Apparel Sportswear Shop, with stores in Oak Park, Evanston and Palm Beach,

and, despite the fact that defendant had continuously advised her that he was the sole owner of these business enterprises, he has lately stated to her that he has made his sisters partners, and plaintiff charged that if in fact such partnership exists the interests of the sisters are fictitious and made for the purpose of placing defendant's assets out of the reach of the court. In the present suit she alleges that she and defendant were at all times the actual and bona fide owners of all the shares of stock and of all the proprietary interests in the corporation incorporated in 1932 and the real parties in interest in the partnership created by the agreement of December 1, 1941; that she never received any consideration for the assignment of her interests in the partnership to defendant dated December 1, 1942, and that the assignment by her and subsequent assignments to defendant's sisters were fictitious and shams and were not actual and bona fide transactions; that the actual partners and owners of Bramson's are, and always were, defendant and plaintiff equally.

██ The master to whom the issues as to plaintiff's claim of partnership were referred, heard the testimony of plaintiff, her father, and defendant— called as an adverse witness under the statute. At the close of plaintiff's evidence, on motion of defendant, the master found that plaintiff had failed to establish a prima facie case and recommended the dismissal of count one of the amended complaint. The court approved the master's report and dismissed the count for want of equity. The duty of the master and the trial court in passing upon defendant's motion is stated in Fewkes v. Borah, 376 Ill. 596, cited by plaintiff, as follows:

"The only question involved here is whether there is enough in this testimony to sustain a decree for plaintiff in the absence of rebutting testimony. The rule is that where a motion is made to dismiss a bill

258

at the close of the plaintiff's testimony, such motion is in the nature of a demurrer to the evidence and admits the truth of the testimony, and in passing upon the motion it is the duty of the court to consider the testimony in the light most favorable to appellant, since such motion presents the sole question whether the evidence tends to establish a cause of action. Williams v. Webster Hotel Co., 315 Ill. 64."

■ ■ The question of a partnership as between plaintiff and defendant is one of the intention of the parties, to be proved by an express agreement or inferred from the acts or conduct of the parties. Patek v. Patek, 263 Ill. App. 487, and cases cited. There is no express agreement between the parties, except the 1941 agreement which was entered into for income tax purposes. Defendant retained control and direction of the business. Plaintiff testified before the master in the first suit for separate maintenance that any interest she held in the business was held for defendant. When defendant for some undisclosed reason decided that plaintiff should not be in the business, she executed without protest and without consideration an assignment of her interest, endorsing checks, apparently in payment of earnings on the one-third interest in her name, and returning them to defendant. There is no evidence tending to show that the assignment by plaintiff was obtained by any deception or fraud or undue influence or coercion on her. There is no evidence that she exercised or attempted to exercise the rights of a partner and that she at any time ever received any income or profits from the business. She testified in the former hearing that she had been receiving from defendant $250 a week for 10—maybe 14 years, out of which she only took care of the help, the house and her own spending money; that aside from this money she had no funds or income of her own. Whether, as plaintiff contends, defendant was aided in maintaining and developing the business by

259

loans from plaintiff's father and funds from pawning plaintiff's jewelry, is disputed and is immaterial. The alleged transactions indicate a relation of debtor and creditor, not a partnership. Whatever money was obtained from these sources was repaid. Plaintiff's jewelry was returned to her. Similarly, the use in the business of the proceeds of sale of the home in River Forest, held in joint tenancy, is not evidence of a partnership relation. As she testified, she guaranteed loans of the corporation at the bank because the stock stood in her name. The court did not err in dismissing plaintiff's claim of a partnership.

That part of the decree dismissing count one of the amended complaint for want of equity is affirmed. The parts of the decree granting defendant a divorce and dismissing plaintiff's suit for separate maintenance, are reversed. The cause is remanded with directions to grant leave to plaintiff to amend count two of the amended complaint to conform to the facts and to enter a decree for separate maintenance on the amended complaint as amended, and for further proceedings in conformity with this opinion.

Affirmed in part, reversed in part and remanded with directions.

BURKE, P. J. and FRIEND, J., concur.