(No. 34620.—

Sarah M. Lemon, Appellant, *vs.* James G. Lemon, Appellee.

*Opinion filed May 21, 1958.*

EUCLID LOUIS TAYLOR, and HOWARD T. SAVAGE, both of Chicago, for appellant.

EDWARD B. TOLES and SIDNEY A. JONES, JR., both of Chicago, for appellee.

Mr. JUSTICE DAILY delivered the opinion of the court:

On August 28, 1956, the plaintiff, Sarah M. Lemon, filed complaint in the superior court of Cook County for separate maintenance against her husband, James G. Lemon, alleging both desertion and cruelty upon the latter's part. The defendant answered by denying the material allegations thereof and then counterclaimed for divorce on the ground of cruelty. The complaint was subsequently amended to one of divorce, and on May 13, 1957, the countercomplaint was likewise amended so as to charge plaintiff with constructive desertion since January 8, 1956. The cause was tried without a jury upon these issues and, after hearing, the court found for the defendant, dismissed the plaintiff's complaint, and granted a divorce to the husband upon his counterclaim. The decree awarded plaintiff the custody of their two minor children; granted her the household furniture and the right to occupy the family domicile with the children without payment of rent; required defendant to pay all taxes and fuel bills for these premises and to also pay to plaintiff the sum of $50 per week as alimony and child support; stated that the husband should furnish necessary child medical care and pay plaintiff's attorney fees and costs, and ordered plaintiff to convey to defendant all interest which she held as his joint tenant of three Chicago properties. A freehold being involved, direct appeal has been taken by plaintiff to this court to review the granting of said divorce.

While the cause was pending in this court, the defendant filed a motion in the nature of a plea of release of errors. This motion, which was taken with the case, alleges that plaintiff waived her right to appeal by accepting the benefits of said decree, in that she had taken the $50 alimony and child support payments subsequent to the divorce, used the household furnishings granted to her by said decree, occupied the home premises without cost, accepted payment of her attorney fees in the amount specified by the court, and benefited from the transcript of proceedings purchased by the defendant. We find this contention to be without merit. It is true that as a general rule a litigant cannot attack a decree whose benefits he has previously enjoyed, especially if to do so would place the opposing party at a distinct disadvantage upon reversal of the decision, (*Reinken* v. *Reinken,* 351 Ill. 409; *Holt* v. *Reid,* 46 Ill. 181,) and in *Boylan* v. *Boylan,* 349 Ill. 471, we held that the voluntary acceptance of attorney fees in accordance with the divorce decree operated as a bar to the wife's appeal. However, this is not the present situation. Here the attorney fees were not received by plaintiff, as was true in the *Boylan case,* but were paid by defendant directly to her trial counsel some four months after the judgment was rendered and one month after the record conclusively showed the substitution of new counsel for the plaintiff. Since the attorneys were no longer retained by plaintiff at the date of payment, their acceptance of fees could in no way prejudice her right to appeal. It must also be remembered that at the time the decree was entered, plaintiff was living in the family domicile with two small children and was using the furniture which had for many years been located therein. Because of her parental responsibilities, plaintiff was unable to work but supported the children with money which defendant had furnished from the inception of their separation. The divorce in no way altered the husband's obligation to support his children and sub-

sequent contributions therefor could in no manner place him at a legal disadvantage. By continuing to occupy the premises with the children, receive the weekly payments, and use the furniture, the plaintiff was doing no more than she had done during the months of litigation, and there is no showing but what such amounts were accepted, not as alimony, but as child support. Since it has not been established that she was personally benefited from the decretal payments, the motion to bar this appeal is accordingly denied.

The evidence presented upon trial of this cause is highly conflicting. Sarah Lemon testified that since their marriage in 1950, she and her husband have resided in Chicago. They have two children. According to her account, she and the defendant started having serious marital difficulties in September, 1955, when he beat her without cause on three separate occasions. Although she filed suit for divorce at that time, the matter was subsequently dismissed. The parties continued to live together until January 8, 1956, at which time defendant, again without cause, announced he was leaving. Plaintiff swore that although she begged him to stay, defendant moved to the home of a friend, cautioning her, however, to keep the separation secret. Defendant at that time allegedly told her that he would continue to support his family, share the family automobile with her, and entertain her socially to preserve the marital appearance. Plaintiff also said that around February 8, 1956, her husband became ill and returned home to convalesce, whereupon she fixed his meals, gave him his medicine, and generally nursed him back to health. Upon his recovery some fifteen days later, the litigants went to a party and returned home around 3 A.M. at which time defendant announced his intention to again separate, kissed his wife, and left to take up residence with his friend. On April 15, 1956, defendant was visiting plaintiff at the latter's home when a dispute developed

which ended with defendant beating his wife across the back with the telephone receiver. As told by plaintiff, defendant returned the next day to resume the argument and again strike her. Plaintiff also spoke of other beatings which were allegedly administered to her by the husband on June 1, 1956, and December 15, 1956. Upon the former occasion, she and the children were proceeding by foot to a school picnic when defendant overtook them in his automobile, struck the plaintiff, and took one of the children with him. As it later developed, the litigants, each with a child, arrived at the picnic about the same time and returned home together in the automobile. Finally, plaintiff described a quarrel with defendant at the family home on February 7, 1957, over some pictures, which resulted in his knocking her downstairs. On cross-examination, she admitted that defendant brought the car to her each morning so that she might use it during the day, that he had a key to her house and free access thereto during the period of separation, and that defendant supported his family after he removed himself from the premises.

Georgette Hampton, a maid at plaintiff's home following the separation, corroborated plaintiff's account of the beatings administered to her by defendant on April 15 and 16, 1956, and testified that between March 25, 1956, and the latter part of July, 1956, defendant was at the house every day and sometimes several times the same day. She also stated that defendant had a key to the house and came and went as he pleased. Another witness, Ann Blackwell, substantiated plaintiff's testimony concerning a quarrel between the parties in September, 1955.

The husband, an attorney, although describing similar occurrences, gave a completely different account of the happenings. According to his testimony, plaintiff was the aggressor in the September 1955, and February, 1957, altercations and struck him on these occasions without any fault upon his part. He told of similar beatings which she

administered to him on November 1, 1955; November 20, 1955; January 2, 1956; and January 8, 1956. Upon the latter occasion, defendant said he was lying in bed when his wife struck him across the face with her hands, and when he asked her what was the matter she told him to get out, whereupon defendant packed and left. He admitted that he became ill and returned home on February 18, 1956, to be cared for by his wife, but maintained that he left about ten days later, not of his own accord, but upon plaintiff's insistence. He denied that any quarrels occurred in April or December, 1956, but stated that plaintiff struck him at her home on March 7, 1956. From the date of separation until October, 1956, defendant came to the house each morning and took his children to school. As to the three parcels of real estate, defendant testified that one was inherited from his father and the other two were purchased by him with his own funds. Although his wife was named as joint tenant with him in all the deeds, he maintained that the parties understood there was to be no present gift but that the joint ownership was used merely to avoid probate proceedings in case of death.

Earl Brooks, a lawyer associate of James Lemon, corroborated defendant's account of quarrels occurring on November 1, 1955, January 2, 1956, and January 8, 1956, by describing scratches which he observed on defendant's body the following days. Defendant's step-mother, Mattie Lemon, also testified that she observed scratches on defendant's face following the alleged November 20, 1955, and January 8, 1956, quarrels.

Section 1 of the Divorce Act (Ill. Rev. Stat. 1955, chap. 40, par. 1) provides that a divorce based upon desertion may be granted where either party "has wilfully deserted or absented himself or herself from the husband or wife, without any reasonable cause, for the space of one year," and is applicable both where the complaining party

is actually abandoned and where he himself abandons his spouse for cause which would have entitled him to a divorce. (*Holmstedt* v. *Holmstedt*, 383 Ill. 290; *Ludwig* v. *Ludwig*, 413 Ill. 44; *Insoda* v. *Insoda*, 400 Ill. 596.) However, the statute contemplates much more than the mere separation of husband and wife by mutual consent or acquiescence *Lutticke* v. *Lutticke*, 406 Ill. 181; *Floberg* v. *Floberg*, 358 Ill. 626; *Mischler* v. *Mischler*, 333 Ill. App. 214, 77 N.E.2d 209) in that it requires an actual abandonment and abnegation of all marital relationships with an intent not to return and without legal justification or consent of the other spouse. (*Fritz* v. *Fritz*, 138 Ill. 436; *Maxwell* v. *Maxwell*, 333 Ill. App. 625, 78 N.E.2d 140; *Lundy* v. *Lundy*, (Ariz.) 202 Pac. 809; 16 I.L.P., Divorce, sec. 14; Black's Law Dictionary, 3d ed., p. 565.) Of course, the determination of intent and consent must be based upon the facts of each individual case and may be inferred from the conduct of the parties themselves. (17 Am. Jur., Divorce and Separation, sec. 91; *Ellis* v. *Ellis*, (Ariz.) 262 Pac. 614.) Here, defendant insists that although he left the marital abode, he did so because of the acts and at the insistence of his wife, and is therefore entitled to prevail upon the theory of constructive desertion. Not only is his avowed cause for leaving somewhat questionable, (*Bramson* v. *Bramson*, 4 Ill. App.2d 249, 124 N.E.2d 33; *Swan* v. *Swan*, 331 Ill. App. 295, 73 N.E.2d 153,) but it is our opinion that no wilful desertion actually occurred in the present case. Defendant would have us believe that the period of desertion commenced on January 8, 1956, and continued to the filing of his amended countercomplaint on May 13, 1957. Yet the record conclusively shows that during at least a material portion of this time, the parties were sharing the same automobile, defendant was taking the children to school each morning, he was completely supporting his wife and children, he had the key to the home and free access thereto,

and he was at the house at least once a day and sometimes more. There was also evidence to show that he attempted to keep the separation secret, that he and plaintiff thereafter attended social functions together as husband and wife, and that the final separation occurred upon the most amiable of terms. It is also admitted that during this period of alleged abandonment, defendant became ill and returned home for at least ten days to receive the care and comfort of his wife. It is' clear that defendant made no serious objection to the marital circumstances but by his acts acquiesced in their continuance. This being the case, his removal from the premises constituted a voluntary separation. We hold therefore that the trial court erred in granting a decree for divorce upon this ground. It necessarily follows that it had no power to determine property rights since such can be based only upon a valid divorce decree. (Ill. Rev. Stat. 1955, chap. 40, par. 18.) However, because of the conflicting nature of the testimony offered in these proceedings and the weight which must be afforded the findings of the chancellor, (*Marcy* v. *Marcy,* 400 Ill. 152; *Podgornik* v. *Podgornik,* 392 Ill. 124; *Carter* v. *Carter,* 152 Ill. 434,) we cannot say that the lower court erred in dismissing plaintiff's complaint for want of equity.

Other questions have been raised by this appeal but because of the decision which we make herein it is unnecessary for us to pass upon them at this time. For the reasons stated, the decree of the superior court of Cook County is reversed.

*Decree reversed.*