# DOROTHY O. BROWN *vs.* RUSSELL MORTON BROWN.

## JANUARY 31, 1962.

PRESENT: Condon, C. J., Roberts, Paolino and Powers, JJ.

24

CONDON, C. J. This is a wife's petition for divorce from bed and board. The cause was heard in the superior court on the respondent's pleas to the jurisdiction of that court over the subject matter. After the hearing the trial justice overruled the pleas in a written decision to which he later filed what he termed an "addendum" supplying certain inadvertent omissions in the decision. The cause is here on the respondent's bill of exceptions to the decision and also on his appeal from the addendum which he filed because of doubt as to the effect thereof on his exceptions.

In our opinion the cause is properly here on the exceptions. Since the matters alluded to in the addendum do not materially alter the decision, the filing of the addendum may be disregarded in so far as the propriety of appellate proceedings is concerned. The respondent's appeal therefrom is accordingly dismissed pro forma.

The pleas to the jurisdiction substantially averred among other things that the marital domicile was in the District of Columbia and that petitioner without just cause had left such domicile. The petitioner contended that she had left because of certain cruel treatment by respondent and she testified as to the nature and extent of such treatment. The respondent also testified concerning the same in a vein that tended to minimize if not to contradict petitioner's testimony. There was no corroboration of petitioner since the incidents upon which she based her claim of extreme cruelty occurred in the privacy of the parties' apartment in the District of Columbia. However, on the evidence the trial justice found that while the marital domicile was in the District of Columbia petitioner nevertheless was entitled to acquire a separate domicile because of respondent's cruel treatment and that she had lawfully established a domicile in Rhode Island.

Under his exceptions respondent contends that the trial justice erred. He argues that the law permits a wife to acquire a separate domicile on the ground of the husband's cruel treatment only if such cruelty is sufficient to warrant a divorce or judicial separation. He claims that the evidence upon which the trial justice relied falls short of such requirement. On the other hand petitioner contends, if we understand her, that such is not the law and that a less quantum of proof of cruel treatment would warrant in the discretion of the trial justice a finding that justifiable cause existed for the wife to acquire a separate domicile. And she argues further that this is especially so in a case where as here she is merely seeking a judicial separation and not an absolute divorce.

It is not clear from the trial justice's decision upon what view of the law he relied. He reviews the evidence at great length therein and expressly finds as a fact that on April 14, 1957 respondent did commit an assault and battery upon her. However, he also reviews certain other evidence relating to letters which respondent had received from a former wife and which apparently precipitated the assault. Based on the testimony of petitioner regarding these letters he concluded that: "The respondent was apparently still emotionally involved with his first wife when he married the petitioner. He had not severed all ties; he was certainly not ready to be married to someone else."

Whether the evidence reasonably supports such a conclusion we need not determine. We shall assume that it does. Based on this assumption it would appear that the trial justice found petitioner's justification for leaving respondent in that finding of fact coupled with the fact of the assault and battery. The question then is did the trial justice equate such conduct with extreme cruelty as a ground for divorce or with a kind of cruelty of less gravity. And if the latter, did he apply the correct rule of law to the evidence.

26

While the law is now settled, at least in the United States, that for justifiable cause a wife may acquire a separate domicile of her own for the purpose of divorce, it is not settled whether such right is absolute or conditional. See Note, 39 A.L.R. 706-712. However, it has been stated by one leading text writer on the subject that, "Most of the decisions indicate that conduct less than sufficient to amount of itself to ground for divorce or judicial separation, in the absence of separation by consent, will not support the acquisition of a separate domicile or residence by the wife." 2 Nelson, Divorce and Annulment (2d ed.), §21.24, p. 660. See also Keezer, Marriage and Divorce (3d ed.), §60, p. 90.

Such was the view expressed by this court over a century ago in *Ditson* v. *Ditson*, 4 R. I. 87, and it has been reiterated since in *White* v. *White*, 18 R. I. 292. In *Ditson* we said that the domicile of the husband is by law that of the wife but that when he commits an offense or is guilty of such dereliction of his marital duty as entitles her to have the marital bond either partially or totally dissolved she may acquire a separate domicile of her own. We are, therefore, of the opinion that the conduct of respondent which petitioner relies upon here as a cause for leaving the marital domicile in the District of Columbia and adopting a separate domicile of her own must be of such enormity as to amount to the ground of extreme cruelty.

If the trial justice did not so conceive the rule of law to be applied to the evidence he was in error. On the other hand if he applied the correct rule the question remains whether the facts as he found them on the conflicting evidence constituted extreme cruelty within the meaning of that term as this court has heretofore construed it. In answering this question we shall not weigh the conflicting evidence but shall assume the facts to be as he found them, namely, that respondent was guilty of an assault and battery, that he was "still emotionally involved with his first

wife" when he married petitioner, and that he had not severed all his former marital ties.

These findings were based principally on petitioner's testimony of certain events in the parties' apartment in the District of Columbia on Sunday morning, April 14, 1957. It appears therefrom that shortly before noon the parties were engaged in a conversation concerning certain letters to respondent from his first wife largely about his son by that marriage but also containing allusions to or reminiscences of incidents which she and respondent had apparently enjoyed together during such marriage. Whether she was thereby attempting to reawaken the dormant affection of a once happy past or to fan into flame again the embers of a passion that had not wholly burned out with their divorce is not evident from the letters. But to petitioner who had read them and apparently pondered over them they were eloquent with such an implication.

The upshot of the conversation was an angry altercation in which she charged respondent with an immoral relationship with his first wife whereupon he struck her and she fled from the apartment to the apartment of an acquaintance in the same building. An hour or so later she returned and started to pack her traveling bag preparatory to leaving respondent because, as she said, of her fear of him while he was so enraged. However, she desisted after he had repeatedly taken her things out of the bag as soon as she put them in. Thereafter they had lunch together in the apartment. At her request respondent left the apartment to get this lunch and was gone about an hour or more. Except for these absences both remained in the apartment all day and slept together that night in the same bedroom in twin beds.

There is no evidence that respondent ever met his first wife after his marriage to petitioner. Aside from the letters there is no evidence of any interest on the part of respondent that they should meet again and renew old acquaint-

ance. There was definite evidence that he was interested and even eager to hear about his son. He welcomed the letters from his first wife because they contained news of the son and apparently for this reason he treasured them. It is obvious from her testimony that petitioner deemed this a subterfuge to carry on a correspondence with the first wife and that it was in her view an immoral relationship. The trial justice appears to have considered it at least a provocation to petitioner to make the accusation which brought on the assault.

In our view whatever the connotations of the correspondence might be they do not amount to extreme cruelty as a ground for divorce. Nor do they amount to the ground of gross misbehavior and wickedness. In a case where the evidence of a husband's affections outside the marital union was infinitely stronger than in the case at bar this court refused to accept it as proof of such ground. In the course of its opinion the court pointed out the requirements therefor saying, "* * * when estrangements arise between man and wife, it looks for the exercise of patience to bear, and the influence of time to reconcile and heal them, knowing that marriage is a discipline as well as a delight; and it withholds the extreme remedy of divorce until the domestic estrangement, either connects itself with some one of the specific causes of divorce known to the law, or results either by instantaneous misdoing, or persistent derelictions of duty" as described in the statute. *Stevens* v. *Stevens*, 8 R. I. 557, 561.

The next question is whether the assault and battery was in its nature a case of instantaneous misdoing that amounted to the ground of extreme cruelty. We have heretofore held that such ground is not susceptible to precise definition but that what constitutes it is to be determined from the facts of each case. *Tremblay* v. *Tremblay*, 59 R. I. 401. However, a single act of physical violence not atrocious in its nature or unaccompanied by gross brutality is not ex-

treme cruelty. *Jackson* v. *Jackson,* 70 R. I. 333; *Havens* v. *Havens,* R. I., 140 A. 193. See also *Stevens* v. *Stevens, supra,* at page 559, wherein it is assumed that extreme cruelty is one of those causes "which acquire their efficiency by continuance" except where a single act was so atrocious that the court would not wait for its repetition.

The act of physical violence in the case at bar was minimal and caused no physical injury. It did not partake of any studied brutality or atrociousness on the part of respondent but arose out of a sudden burst of anger provoked by petitioner's accusation that he was indulging in an immoral relation with his first wife. In our opinion it falls short by a wide margin of the kind of conduct which could reasonably be considered as extreme cruelty.

In this state of the evidence and the law applicable thereto petitioner has clearly failed to show that respondent was guilty of any dereliction of his marital duty that would entitle her to have the marriage either partially or totally dissolved. This being so she was not justified in attempting to acquire in Rhode Island a domicile of her own separate and apart from the marital domicile in the District of Columbia.

The petitioner complains that she should not be placed under such a heavy burden merely to establish domicile and she contends the law in other jurisdictions has not imposed such a burden, citing *State of Missouri ex rel. Taubman* v. *Davis,* 199 Mo. App. 439. Aside from the fact that the question involved there was venue and not domicile we do not think it states the law consistently with the language in *Ditson* v. *Ditson, supra.*

Domicile has long been of paramount concern in the law of divorce and continues to be despite a modern tendency to weaken the doctrine. The marital domicile should not be disturbed for light and transient causes. As was said in *Ditson* it is the right of every nation and state to determine the status of its citizens without interference by foreign tri-

bunals in a matter with which they have no concern. We should not make it an easy formality for the petitioner here to abandon her domicile in the District of Columbia. Because we think the effect of the trial justice's decision is to do just that we are constrained to hold that he erred.

The respondent's exception to the overruling of his plea to the jurisdiction is sustained, the trial justice's decision is reversed, and the cause is remanded to the superior court with direction to dismiss the petition for divorce for lack of jurisdiction.

### MOTION FOR REARGUMENT.

### FEBRUARY 14, 1962.

PER CURIAM. After our opinion in the above cause was filed the petitioner asked and received permission to present a motion for leave to reargue. Pursuant thereto she has filed such a motion, setting out therein certain reasons on which she bases her contention that justice requires a reargument of the case.

We have carefully considered those reasons and we are of the opinion that they suggest nothing which in the circumstances warrants a reargument.

The motion is denied, and the cause is remanded to the family court with direction to dismiss the petition for divorce for lack of jurisdiction in accordance with our original opinion.

*Edwards & Angell, Gerald W. Harrington,* for petitioner.

*Matthew E. Ward, Aram A. Arabian,* for respondent.