306 A.2d 847.

JAY DWIGHT DOUGLAS *vs.* ROSAMOND ELAYNE DOUGLAS.

JULY 12, 1973.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

JOSLIN, J. This divorce action comes to us on the wife's appeal (1) from a Family Court decision and decree granting the husband's petition for an absolute divorce on the ground of willful desertion; and (2) from another decree of that court entered in the same proceeding on the same day adjudging the wife in contempt for violating a restraining order which had earlier issued.[1] The provisions of the restraining order as well as those of the contempt decree are detailed in our consideration of the appeal from the contempt adjudication.

## THE DIVORCE

The parties were married in Rhode Island in 1956, and resided here continuously from May, 1958 to July, 1965, when the wife surreptitiously departed from the abode which

---

[1]The divorce decree, in addition to granting the husband's petition, also contains substantially the same provisions as does the decree holding the wife in contempt. No explanation is forthcoming for this procedure, and although not questioned, it certainly is not endorsed.

the parties shared in this state and moved with their four minor children to California where she established her home and has since resided.

Whether she had cause for departing from the marital domicile and abandoning her husband is in dispute. She testified that the marriage was unhappy from the start, and that she left her husband because he was consorting with other women and had been cruel and abusive to her. He denied those assertions and insisted that he had always behaved properly and had given her no cause for leaving him.

In any event, and irrespective of whether or not her departure was justified, the wife left this state without word to her husband about her plans, and he, notwithstanding extensive efforts, did not discover her whereabouts for a few months. When he finally ascertained that she and the children were in California he promptly journeyed there in an attempt to persuade her to return to Rhode Island.

While the husband failed to accomplish his mission on his first visit to California, he was not discouraged. Instead, he persisted in his attempts to preserve the marriage and to that end returned to California on about 15 occasions over the next five years. On one of those visits a fifth child was conceived.

Even the wife's pregnancy and the birth of the fifth child in June of 1967 failed to heal the breach between the parties. While both were apparently willing to resume living together as husband and wife on a permanent basis, their inability to agree on where they would reside proved to be an insurmountable barrier. The wife was adamant in her refusal to leave California and conditioned a reconciliation upon the husband's settling in that state. For a while he contemplated acceding to her demand, but ultimately decided against uprooting himself from this state.

Finally, by the end of 1967 it had become obvious that reconciliation was impossible, and thereupon, both parties commenced divorce proceedings, she in California late in 1967 or early in 1968, and he thereafter in this state in March of 1968.

The husband's action was the first to be heard on the merits and resulted in his being granted an absolute divorce on the ground of willful desertion.[2] Under our cases[3] his entitlement to a divorce for that reason required (1) an actual cessation of cohabitation for the period specified; (2) a willful intent of the absent spouse to desert; (3) a desertion by the absent spouse against the will of the other; (4) an absence of justification for the desertion, that is, a showing that the complaining spouse was not guilty of a recriminatory offense, nor of any conduct that was repugnant to the marriage covenant, provocative of domestic discord or of such a nature as to provoke the conditions which caused the absent spouse to leave the marital domicile; and (5) since the desertion was for a shorter period of time than five years,[4] the lack of any probable ground for believing that the parties would ever be reconciled.

---

[2]The pertinent statute, G. L. 1956 (1969 Reenactment) §15-5-2, provides that a divorce from the bond of marriage shall be decreed for "* * * wilful desertion for five (5) years of either of the parties, or for such desertion for a shorter period of time in the discretion of the court * * *."

[3]*Menard* v. *Menard,* 106 R. I. 709, 263 A.2d 98 (1970); *Parker* v. *Parker,* 75 R. I. 27, 63 A.2d 211 (1949); *Long* v. *Long,* 52 R. I. 162, 158 A. 771 (1932).

[4]The trial justice found that the period of desertion in this case began after the conception of the fifth child in late summer of 1966. It terminated approximately one-and-a-half years later in March, 1968 when the husband by commencing this proceeding evidenced his consent to his wife's living separate and apart from him. *Krawcyzk* v. *Krawcyzk,* 81 R. I. 335, 338, 102 A.2d 870, 871 (1954); *Burns* v. *Burns,* 50 R. I. 129, 133-34, 145 A. 445, 448 (1929). The wife does not contend that the trial justice abused his judicial discretion in finding that an abandonment for so limited a period was sufficient to constitute a willful desertion. *See* *Blatchford* v.

Using these guidelines as his points of reference, the trial justice found that the wife unjustifiably and without the husband's consent had left the marital domicile in 1965; that the conception of a fifth child in the late summer of 1966 constituted a voluntary resumption of cohabitation which terminated as well as condoned the wife's existing desertion; that the wife again deserted the husband by thereafter unjustifiably refusing his request to return to the family domicile in this state; and that the present action was commenced when there was no longer a possibility of a reconciliation. Then, on the basis of those findings, he concluded that the husband was entitled to a divorce on the ground of willful desertion.

The wife, except perhaps tangentially, neither questions the controlling legal principles nor how they were applied by the trial justice. Instead, she challenges his factual determinations and, at the outset, argues that he erred when he rejected her testimony concerning her husband's prior indiscretions, and instead accepted the husband's that he was faultless and that she had abandoned him unjustifiably.[5] If she is correct, then, of course, it was error to grant

---

*Blatchford,* 67 R. I. 24, 20 A.2d 539 (1941); *Marcello* v. *Marcello,* 59 R. I. 232, 194 A. 739 (1937). Perhaps she failed to raise this issue because she felt that under the law of this state her refusal to return to Rhode Island revived her earlier departure from this state as the starting point of the period of desertion.

[5] The wife in her brief and argument refers to the husband's "fault" as barring him from obtaining a divorce, and the trial justice in his decision speaks of justification for the abandonment as constituting a defense to the husband's petition. While the wife purports to distinguish the two, any difference in the present context is one of labels rather than of substance. Thus, one text writer says that "[i]f either spouse is guilty of such misconduct as to justify the other in leaving, the latter's absence does not amount to desertion." And continuing in the same section the author observes that "[s]ome courts have simply asserted the 'clean hands' doctrine to reach the same result." Madden, *Persons & Domestic Relations* §86 at 286-87 (1931).

the husband a divorce for if he were guilty of that kind of misconduct she would have been justified in abandoning him, and a justifiable abandonment is not a willful desertion. *Menard* v. *Menard,* 106 R. I. 709, 263 A.2d 98 (1970).

To support her position the wife refers to the portion of the trial justice's bench decision where, in the course of discussing the parties' cohabitation and procreation of a fifth child in California, he comments that the husband condoned "the fact that she had left and had gone to California without justifiable cause, and *she, in fact, condoning all of his previous indiscretions which would be susceptible to a [c]ourt ruling in her favor in a divorce petition."* (emphasis added).

That comment, the wife insists, constitutes a finding by the trial justice that her husband was guilty of the recriminatory offense of consorting with other women, thereby precluding her husband from complaining that she deserted him.

We agree that the quoted language standing alone may be susceptible to the reading that the wife gives it, but we are satisfied that it conveys an entirely different meaning when read contextually. It then becomes quite obvious that the trial justice, rather than finding as a fact that the husband had been indiscreet, was merely engaging in a gratuitous assumption when he said, in effect, that the facts were such that the wife might not prevail *even if* he were to accept as true her testimony that her husband had consorted with other women.

That this is the posture from which the trial justice speaks is amply demonstrated when we look at an earlier portion of his decision where, after categorically and unequivocally stating that there was no convincing evidence that the husband had consorted with other women, he went on to *query,* whether or not, *assuming all* the wife's *statements to be true,* grounds for divorce would exist.

It thus becomes clear that in this instance the wife has merely pitted an actual factual determination against an assumed fact, and then argued that the two cannot co-exist because one is contrary to the other and that we should accept the assumed and reject the actual.

In passing upon fact-findings, however, our concern is not with a factual strawman constructed for the limited purpose of an *arguendo* hypothesis, but with ascertaining whether those findings are based upon an oversight or misconception of material evidence, or are otherwise clearly wrong. *Poirier* v. *Poirier*, 107 R. I. 345, 350-51, 267 A.2d 390, 393 (1970); *Pereira* v. *Pereira*, 105 R. I. 746, 748, 254 A.2d 436, 437 (1969). Here the wife has tilted only with the strawman; she has not taken effective issue with the trial justice's finding that the husband was not indiscreet.

The wife makes two additional contentions both of which are answerable in the same manner as the argument just considered. The first is that the husband's refusal to establish a new marital domicile in California breached her condonation of his prior indiscretions and made that prior recriminatory conduct available to her as a defense to the charge that she had willfully deserted him; and the second is that those indiscretions were sufficiently provocative under the rule in *Ditson* v. *Ditson*, 4 R. I. 87 (1856),[6] to war-

---

[6]The rule in the *Ditson* case is that the domicile of the husband is by law that of the wife unless he commits an offense or is guilty of a dereliction that would entitle her to have the marriage · either totally or partially dissolved. *Accord, Brown* v. *Brown*, 94 R. I. 23, 29, 177 A.2d 380, 383 (1962); *White* v. *White*, 18 R. I. 292, 27 A. 506 (1893). Thus, a wife who refuses to live in the domicile selected by her husband is a deserter unless she has been provoked to leave, or has separated by agreement. *Whitcomb* v. *Whitcomb*, 86 R. I. 62, 67, 133 A.2d 746, 748 (1957). The wife in no way questions, and we do not *sua sponte* consider, whether this almost vestigal remainder of the husband's once dominant position in · the husband-wife relationship is still appropriate in an era when Women's Liberation is in the forefront; when the Supreme Court in *Frontiero* v. *Richardson*, 411 U. S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973),

rant her refusing to return to the marital domicile in this state and to justify her establishing a domicile of her own in California. Both contentions would be well taken if based upon facts, but neither merits any further consideration than the observation that each incorrectly assumes a factual determination that the husband was indiscreet and ignores the trial justice's explicit finding to the contrary.

Finally, there is the wife's contention that the husband's conduct and actions while in California at least impliedly manifested his consent to her acquiring and maintaining a separate residence of her own in that state and by so consenting he abandoned his claim to willful desertion as a ground for divorce. *Parker* v. *Parker,* 75 R. I. 27, 29-30, 63 A.2d 211, 212 (1949); *Burns* v. *Burns,* 50 R. I. 129, 134, 145 A. 445, 448 (1929); *Roy* v. *Roy,* 47 R. I. 81, 84-85, 129 A. 830, 832 (1925).

Whether or not the husband did so consent was a factual question, *Woodson* v. *Woodson,* 256 A.2d 410 (D.C. App. 1969); *Lemon* v. *Lemon,* 14 Ill.2d 15, 21, 150 N.E.2d 608, 612 (1958); *Goldman* v. *Goldman,* 156 Pa. Super. 413, 40 A.2d 878 (1945), the answer to which could have been supplied either directly or by implication from the husband's conduct, 1 Nelson, *Divorce & Annulment* (Second) §4.12 at 89 (1945).

Here the wife argues that the trial justice should have inferred such consent from the husband's inquiries about the California housing situation and its employment prospects, and from his having shipped some of his household furnishings and effects to that state. But, according to the

(Opinion of Mr. Justice Brennan), has said that discrimination based upon sex is "inherently suspect," and that a law differentiating between male and female eligibility for armed service dependent's benefits is invidiously discriminatory; and when our own Legislature has expressed the public policy of this state by ratifying the proposed equal rights amendment to the Federal Constitution. *Acts & Resolves,* 353 (April 14, 1972).

trial justice, those were the actions of a "vacillating," "ambivalent," and indecisive person who, though he may have flirted with the idea of making California his home, certainly did not thereby consent to his wife's maintaining a separate residence in that state.

For the wife to prevail in her contention that the husband consented to her becoming a California domiciliary, she argues, requires a showing that the inference of acquiescence which the trial justice should have drawn is so much more probable and reasonable than that of nonacquiescence actually drawn as to negate the probability and reasonableness of the latter and thereby render it incompetent. *Papineau* v. *Personnel Board,* 101 R. I. 359, 223 A.2d 549 (1966); *Labbe* v. *Hill Brothers, Inc.,* 97 R. I. 269, 275, 197 A.2d 305, 309 (1964). This she has failed to do.

In sum, none of the wife's arguments persuade us that the trial justice erred in granting the husband a divorce on the ground of willful desertion.

## THE CONTEMPT DECREE

It was in late 1967 or early 1968 that the parties resorted to the courts for help in solving their domestic problems. The wife was the first in the field and her action in California for an absolute divorce preceded the instant proceeding which was not instituted by the husband until March, 1968.

There was no activity in either case for about two years, and then the California action was noticed for a hearing on the wife's application for temporary support for herself and the children and for counsel fees. Although the husband was a party to that proceeding having been personally served with process while in California, he preferred that the rights of the parties be determined in Rhode Island. Accordingly, he activated his case in this state by petitioning the Family Court to enjoin his wife from further participation in the California proceedings. He was

fearful, or so his petition alleged, that his wife, if allowed to proceed in California unchecked, might obtain temporary allowances for herself and the children and an order for counsel fees beyond his ability to pay, and, in addition, he expressed a concern that his wife, notwithstanding his asserted freedom from fault, might secure a divorce under California's no-fault divorce laws.

A justice of the Family Court, apparently sympathetic to the husband's fears and concern, enjoined the wife, *ex parte,* from pursuing her application for temporary support and counsel fees as well as her petition for a dissolution of the marriage, either in California or in any other sister state. Although both the wife and the California court were notified of the restraining order, the hearing in California proceeded as scheduled and the wife was awarded custody of the children, and the husband was ordered to pay $1,250 per month as child support, $350 per month as spousal support, and $2,500 on account of fees for the wife's attorney. So far as we are advised the husband has not appealed that order, and he does not contend here that the amounts ordered by the California court were unreasonable.

Thereafter, the husband charged that his wife's participation in the California hearing constituted a violation of the contempt order and he moved to have her adjudged in contempt. The wife then petitioned the Family Court to vacate that order *nunc pro tunc.* Both motions were heard at the same time and in the decree granting the husband a divorce as well as in a separate decree it was provided, in substance, (1) that the wife be adjudged in contempt for importuning the California court to disregard the restraining order; (2) that the decision of the California court lacked validity and would not be recognized; (3) that the wife cause the California order to be vacated *nunc pro tunc;* and (4) that until the California decree was vacated no

motion would be entertained for the wife's support or for that of the minor children.

While the wife readily concedes that the Family Court had personal jurisdiction over her and therefore possessed the naked power to enter the restraining order, she argues, in substance, that her residence and domicile in California for that state's requisite statutory period conferred jurisdiction upon its courts to act with respect to her marital status, and that in these circumstances it was error for the Family Court first to restrain her from proceeding further in the pending action in that state, and then to hold her in contempt for violating that restraining order.

The husband's only response to these contentions is to reiterate his position that his wife, by willfully deserting him, foreclosed herself from acquiring a separate domicile of her own in California,[7] and that in such circumstances her pursuit of her pending California application for temporary support and counsel fees was "violative of the sovereign rights of Rhode Island," and impinged upon its "sole jurisdiction over the marriage * * * and over the parties themselves."

For the parties thus to limit their area of disagreement on the contempt question to the single issue of whether or not the wife was domiciled in California, it seems to us, is to adopt a simplistic approach to a serious legal problem and to ignore questions of import which are perhaps essential to the outcome of this aspect of the case.

An illustrative, but by no means exclusive, listing includes such questions as: (1) whether the wife, having failed to perfect an appeal from the restraining order, can

---

[7]There is, of course, no gainsaying that in California, as well as elsewhere, jurisdiction to terminate the marital status generally depends upon at least one spouse being a resident domiciliary of the forum state. *Bell* v. *Bell*, 181 U. S. 175, 21 S.Ct. 551, 45 L.Ed. 804 (1901); *Goodwine* v. *Superior Court*, 63 Cal.2d 481, 483, 407 P.2d 1, 3, 47 Cal. Rptr. 201, 202-03 (1965); Restatement (Second) *Conflict of Laws* 2d §71 at 218-19 (1971).

attack it collaterally in these proceedings; (2) whether the wife's establishment of a separate domicile of her own in California — even though a jurisdictional prerequisite to a dissolution of the marriage — was also a precondition to an award of child or spousal support or of counsel fees; (3) whether a recently enacted statute[8] permitted the California court to find as a jurisdictional fact that the wife, though a deserter, was nonetheless a domiciled resident of that state; (4) whether the circumstances in this case were so extraordinary as to justify the Family Court's enjoining the wife from participating in a proceeding for support and counsel fees before a foreign tribunal notwithstanding that tribunal's prior possession of the controversy, its in personam jurisdiction over both of the parties and the presence of the minor children within its territory; and (5) whether the scope of the relief granted to adjudge in contempt violates constitutional rights.

The outcome of this case, in addition to being important to the parties, is vital to the welfare and well-being of the children whose interests, at least as far as the record is concerned, appear to have been completely neglected. We are reluctant, therefore, to resolve this challenge to the contempt decree, and particularly those issues which affect the children's right to support, without giving both parties a further opportunity to present their views thereon. Accordingly, we are peremptorily assigning this case to October, 1973, for further argument. The parties are directed to file additional briefs on the issues referred to herein and

---

[8]The pertinent California statute provides that "[i]n proceedings for a dissolution of marriage neither the domicile nor residence of the husband shall be deemed to be the domicile or residence of the wife. For the purpose of such proceeding each may have a separate domicile or residence depending upon *proof of the fact and not upon legal presumptions."* (emphasis added). Cal. Civ. Code §4531 (West 1970), *formerly* Cal. Civ. Code §129 (1954); *accord,* Cal. Gov. Code §244 (Supp. 1973); *see also* Cal. Civ. Code §5101 (West 1970), *as amended,* (Supp. 1973).

on such others as may be pertinent. In so doing they shall comply with our Rule 15.

The wife's appeal with respect to the granting of the husband's petition for an absolute divorce on the ground of willful desertion is denied and dismissed, and the decree granting the divorce is affirmed in pertinent part. Decision on the remaining issues raised by the appeal is deferred pending further argument.

Mr. Justice Powers participated in the decision but retired prior to its announcement. Mr. Justice Doris did not participate.

*Max Levin, John S. Lennon,* for petitioner.

*Richard M. Borod, Edwards & Angell,* for respondent.